Nelson, J.,
delivered the opinion of the Court.
We are satisfied, from the pleadings and proofs in this cause, that John W. Summer, on or about the 21st *129 of January, 1860, agreed to sell to Eppy Francis, who died a few days thereafter, the tract of land described in the bill as containing about seventy-six acres, but more correctly described in Carnes’ plat and certificate of survey, as containing ninety-seven acres; that Francis executed to Summer three notes for the purchase money, two of which were assigned by Summer to complainant, on the 12th of January, 1861, and not 1860, as stated in the bill; that complainant obtained judgment against the administrators of Francis and Summer, in the Circuit Court of Cannon, for $553.36, the amount of the balance due on the first note assigned to him; that said judgment and the record thereof had been fraudulently abstracted or destroyed, before this bill was filed, on the 25th of September, 1865; that the record was supplied and established in the Circuit Court, by a judgment duly rendered at the February Term, 1866; and that the second note for six hundred dollars, due 1st of January, 1862, and assigned to complainant, was still due and owing when the bill was filed.
It is charged in the bill, that a title bond was executed by Summer for the conveyance of the land, on the payment of the purchase money, and that it passed into the hands of the administrators of Francis, who, in the first part of their answer, admit its existence, but state, in a subsequent part, that they may be mistaken, and that the paper which they saw may have been the plat and certificate of survey. Summer, in his answer, admits that he sold to Francis 97 acres and 5 poles of land; took three notes for the purchase money; retained the note first due; transferred the other two to complainant; says he *130 was to make the title wben tbe first payment of seven hundred dollars should be made; admits that he. caused the land to be surveyed, and states that he was to have executed a title bond, if he did not, in fact, do so.
After Summer had conveyed, or agreed to convey, the land to Francis, he executed a deed on the 29th of June, 1861, to William Barton, as trustee, for 802J acres and 18 rods, with the reservation hereinafter mentioned, to secure a debt therein specified, due D. M. Jarrett; and Jarrett insists, in his answer, that if any title bond was executed, it does not include the land, or any considerable part thereof, conveyed in said deed of trust.
After the filing of complainant’s bill, A. M Alexander recovered judgment in the Circuit Court of Cannon county, on the 12th October, 1865, against Summer, for $878.11 and costs, under which, and the execution issued thereon, he purchased the land containing by estimation 97 acres, at Sheriff’s sale, on the 4th December, 1865, and took a Sheriff’s deed on the 20th August, 1867, conveying the •same by the metes and bounds set forth in the plat and certificate; and he and his agent, Fare, who made the purchase for him, insist that the contract between Summer and Francis was by parol, and deny the existence of the vendor’s lien claimed in the bill and amended bill.
A deed from Summer to James F. Floyd for the 8021-acres described in the trust deed to Barton, and bearing date 28th February, 1867, is contained in the transcript, but as it does not appear to have been put in issue by the pleadings, its provisions need not be here stated.
The questions principally discussed before us arise out of the question of fact, whether the .contract between Sum *131 mer and Francis was in writing or" by parol. It is virtually admitted, or, at the least, not distinctly denied, in tbe answers of Summer and the administrators of Francis, and is also admitted, by the judgment pro confesso .as to the adult heirs of Francis, that a title bond for a conveyance was executed by Summer to Francis; and the evidence of the only two witnesses examined in the case, tends to establish the same fact. Davenport states that he had a conversation with Summer shortly after he sold the land to Francis, in which he threatened to make his debt upon Francis out of the land, but Summer said he could not do so; that Francis had not paid for the land; that he had transferred the notes to Roberts, and the land was bound for their payment. Markum, a Deputy Sheriff, declined, as he states, to levy an execution upon the land in 1862, because Summer ’ and J. D. Francis “both said there was no deed to the land, nothing but a title bond; that the purchase money had not been paid, and that had to come first.” A recital, however, in the deed of trust from Summer to Barton, bearing date 29th June, 1861, would, if it can be regarded as evidence in the present attitude of the case, seem to place this question at rest; for, after describing the 802§ acres by numerous courses and distances, it provides: “But this sale is made with the express reservation ,of so much of the land herein embraced as I have heretofore conveyed to E. Francis, dec’d, less about 11 acres, which I re-purchased at his sale, and which is hereby sold and conveyed.” The deed of 28th February, 1867, from Summer to Floyd, likewise describes the 802J acres, “as including and excluding 79 acres sold to E. Francis;” .but, *132 having been made since the commencement of this suit, cannot, if it may in this case be looked to for any purpose, be regarded as affecting previous rights. The deed from Summer to Barton, as trustee, had the effect, however, to estop Jarrett, the beneficiary, as well as his trustee, to deny that there was a conveyance from Summer to Francis; but, strangely enough, the bill was dismissed as to them, by the complainants, on the final hearing, and no authoritative decree can be pronounced as to them. The case is only before us upon the appeal of the defendants, Alexander and Fare; and what attitude do they occupy in resisting the relief which the complainant invokes?
It has been seen that Fare was a mere agent for Alexander in the purchase at Sheriff’s sale, and so far as this record discloses has no interest whatever in the land; aud the real contest is now between the complainant and defendant, Alexander, whose suit against Summer was brought. and prosecuted since the commencement of this suit, and who became a purchaser, pendente lite, of the land in controversy. And it is quite clear that' Alexander can not, for two reasons, successfully set up title: first, because the legal title was in Barton, the trustee at the time of his levy and execution sale, and he acquired nothing by his purchase; secondly, because he was a purchaser after the commencement of this suit. It is well settled that a purchaser will be affected with constructive notice whenever his purchase is made during the prosecution of the suit brought to enforce an adverse claim or title, which is set forth with sufficient certainty and distinctness to advise, him of its bearing on *133 the property in litigation. See Shelton v. Johnson, 4 Sneed, 680, 681; and cases cited in notes to LeNeve v. LeNeve, 2 Lead. Cas. in Eq., 170, 171, et seq., 3 ed.; 1 Story Eq., §§ 405 to 408.
As between complainant and Summer, there can be no serious question that the complainant, as assignee of two of the notes for purchase money, is entitled to a vendor’s lien. See 3 Head, 537; 2 Head, 128; 1 Hum., 537; Meigs, 52.[1]
As it has been earnestly argued that the contract between Summer and Francis was by parol, it may not be superfluous to consider the case on the hypothesis that there may be some doubt as to whether a deed, title bond or other writing was executed.
The bill, as we have seen, alleges that there was a title bond. Summer, in his answer, states, as above remarked, that he had the land surveyed for the purpose of executing a title bond to Francis, but that Francis died very suddenly a short time afterwards; that he does not remember whether he executed to said E. Francis a bond for a title or not; but if he did not, he was to have done so, and had the land surveyed for that purpose, as stated in a previous part of this opinion. He says, expressly, that the ninety-seven acre tract is included within the boundaries of said deed of trust to 'William Barton; that the legal title to said land is yet in him, but belongs to the estate of E. Francis, deceased. Neither he nor any of the defendants named *134 in the record pleads or relies upon the statute of frauds. If be and Barton, the trustee, had pleaded it, and such-plea had. been admissible in reply to the allegations of the bill, the recital in the deed for 802J acres, of an express reservation out of tliat quantity, of so much as Summer had before conveyed to E. Francis, deceased; Avould have operated as an estoppel both upon the maker of the deed and the trustee. 6 Cold., 189; and cases cited in 2 Abb., Nat. Dig., 286, No. 43. See, also, Sprigg v. Bank of Mount Pleasant, 10 Pet., 257.
But they could not have formally pleaded the statute of frauds, because the bill states an agreement in writing, and seeks nothing but an execution of that agreement through the enforcement of the vendor’s lien; and, in such a case, a plea that there was no agreement in writing, is not proper: 1 Story’s Eq. PI., § 762. Consequently, if Summer, Barton and Jarretfc were now before the Court, they could not, in any form, interpose the trust deed to Barton as a barrier in the way of complainant, for the obvious reason that the ninety-seven acres of land involved in this suit — with the possible exception of eleven acres, parcel thereof, as to which the proof is not clea&wkey;-were not, in point of fact, conveyed in, but were expressly reserved out of the deed of trust.
The argument which has been so confidently pressed before us, that the contract between Summer and Francis was a parol contract, as to the sale of land, and can not be enforced, rests upon the assumption that such parol contract was void under the statute of frauds; but, in Sneed v. Bradley, 4 Sneed, 301, it was said that “it would be more correct to designate such contracts as voidable rather *135 than absolutely void,” and that "if the contract be fully set forth in the bill, and the defendant admits it in his answer, and submits to waive the statute of frauds; or, what is deemed as equivalent to a waiver, does not insist upon the statute as a defense, a specific performance of the contract will be decreed.”[1]
But the contract stated in the bill is a written contract, and the effect of Summer’s answer, admitting the sale of the 97 acres and 5 poles of land, and expressly denying that they are included in the deed of trust to William Barton, (with an indefinite exception mentioned in the answer,) would be to enable this Court to set up the bond, or conveyance, so admitted, as a lost instrument, independent of the statute of frauds; and, it may be added, that the defendant, Alexander, if he were not clearly repelled on the grounds already indicated, could not, being a third person and a subsequent purchaser, interpose to arrest the execution of the contract, if it had been by parol, on the ground that the requirement of the statute has not been complied with, as Summer, the vendor, admits the agreement, and is willing to perform it, and the other real parties in interest are, apparently, willing to accept the performance: 4 Sneed, 305.
As none of the defendants are before this Court, but *136 defendaDts Alexander and Fare, let so much of the Chancellor’s- decree be affirmed, as declares that they and each of them, are purchasers with notice. Let it be further adjudged that the Sheriff’s sale and deed, under which they claim, are utterly null and void; and let this cause be remanded to the Chancery Court at "Woodbury, to the end that, if complainants so desire, the original defendants, Barton and Jarrett., may, by a proper proceeding in said Court, be reinstated as defendants, and the precise boundaries of the land reserved in the trust deed be ascertained and defined by a decree of the Court; and also to the end that the execution of the decree heretofore entered in said court may be proceeded with, as to the parties not appealing, in such manner as the Chancellor may direct. The entire costs of this cause in this Court, and so much of the costs in the Court below as accrued by reason of their defense in said Court, will be adjudged against Alexander and Fare, the appellants.

 See, also, Norvell v. Johnson, 5 Hum., 491; Anthony v. Smith, 9 Hum., 511; Ellis v. Temple, 4 Cold., 320.

 See contra Pipkin v. James, 1 Hum., 325, 329; Crippen v. Bearden, 5 Hum., 129, 131; Hurst v. Means, 2 Swan, 594; Acc. Cox v. Cox, Peck, 455; Hilton v. Duncan, 1 Cold. 314; Sheid v. Stamps, 2 Sneed, 172; Farris v. Caperton, 1 Head, 608; Wood v. Thomas, 2 Head, 162; Blair v. Snodgrass, 1 Sneed, 27; Wright v. Cobb, 5 Sneed, 143; Beard v. Brisker, 2 Swan, 53; James v. Patterson, 1 Swan, 313; Sullivan v. Ivey, 2 Sneed, 489. See also, Orand v. Mason, 1 Swan, 136; Lane v. Courtney, 1 Heis., 332; Raymond v. Huddleston, Jackson, April 8, 1871.