MOSES W. WAINER *vs.* MILFORD MUTUAL FIRE INSURANCE COMPANY.

Bristol. October 31, 1890. — February 27, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Fire Insurance — Arbitration — Waiver — Non-occupation of Building Insurable Interest — Misrepresentations.*

The assured under a policy of fire insurance, in the form required by the St. of 1887, c. 214, § 60, made a plain but informal offer to submit to arbitration the question of the amount of a loss under the policy, which did not contain the names of the persons selected by him to act as arbitrators; and the insurance company refused the offer on the ground that it was not liable. *Held*, that this was a waiver of any right it might have had to require an award of the amount of the loss as a condition precedent to the maintenance of an action against it on the policy.

A policy of fire insurance, in the form required by the St. of 1887, c. 214, § 60, purported to insure a dwelling-house for five years from its date, January 23, 1887. On that day the assured called upon the company's agent and signed an application for the insurance, and was told that it would be decided upon later

In about two weeks he was informed by the agent by mail that the policy was ready for him, but he did not receive it or pay the premium thereon until March 13 following, subsequent to which the house was burned. *Held,* that the policy did not take effect until March 13, and was not avoided by the house being vacant without the company's assent before that time.

The owner of an undivided half of a dwelling-house bought the other half from his brother by an oral contract, and paid him full price therefor, the latter promising to make and deliver a deed of the same, and thereupon entered into exclusive possession of the whole, claiming title. Five years later, in 1889, in an application made by him for insurance on the house, he described himself as owner thereof, and received a. policy in the form prescribed by the St. of 1887, c. 214, § 60. A week after a subsequent loss under the policy, his brother, who had never disputed his title or refused to give him a deed, gave him a deed in pursuance of his promise. *Held,* that he had an insurable interest in the entire house to its full value, and that his description of himself as the owner was a fair representation of the fact.

CONTRACT upon a policy of insurance, in the form prescribed by the Pub. Sts. c. 119, § 139, (St. 1887, c. 214, § 60,) against loss by fire. At the trial in the Superior Court, before *Mason,* C. J., the plaintiff submitted the case upon the report of an auditor, and the judge ordered a verdict for the defendant, and reported the case for the determination of this court. If upon the facts a finding would be warranted for the plaintiff, the verdict was to be set aside and a verdict entered for the plaintiff for a sum agreed; otherwise, the verdict was to stand. The facts appear in the opinion.

*W. Clifford & E. A. Douglass,* for the plaintiff.

*H. L. Parker & W. M. Butler,* (*G. G. Parker* with them,) for the defendant.

W. ALLEN, J. The action is against a mutual fire insurance company, on a Massachusetts standard policy. Pub. Sts. c. 119, § 139 (St. 1887, c. 214, § 60). The defendant says that the policy is void, and denies any liability under it. It also relies in defence upon the fact that there was not a reference of the amount of the loss according to the provisions of the policy. It is contended by the plaintiff that the reference was not a condition precedent to the right of action, and also that it was waived by the defendant. We do not find it necessary to decide the former point, but one of the grounds upon which it is maintained has a bearing upon the other point, and must be considered in connection with that. It is contended that the provisions for reference are intended to settle the question of the amount of a

loss under an admitted liability, and not the question whether there was any liability for a loss; and that it presupposes a valid policy, upon which the defendant may be liable, and under which there may be a loss.   The material parts of these provisions are in these words: " In case of any loss or damage, the company . . . shall either pay the amount for which it shall be liable, which amount, if not agreed upon, shall be ascertained by award of referees as hereinafter provided. . . . In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss."

Laying on one side the question whether these provisions can be construed to require the insured to refer the question whether there is any insurance, or to debar him from bringing an action to try that question until a sum has been fixed which shall be taken to be the amount of the loss if it shall be determined that there was an insurance and a loss, it is obvious that the nature of the question in dispute is important in construing the acts of the parties, as showing a waiver of the reference of the amount of the loss.   In this case the defendant denied its liability, and it relied on the small value of the property destroyed, not to show that the amount of the loss under the policy was small, but to show that there was no loss.   It was not likely to insist upon referring either the main question of the validity of the insurance, involving various specifications, or one of those specifications separate from all others.   There were negotiations between the parties, in which the defendant denied its liability, but offered to pay a small sum in compromise of the plaintiff's claim, which the plaintiff refused, and notified the defendant that he should bring an action upon the policy.   He then made to the defendant a written offer to submit the amount of the loss to reference. This offer is open to criticism in two particulars.   It has an un-

necessary preface, in which it is assumed that the defendant does not deny its liability; this is immaterial, and the offer is unconditional.    Instead of giving the names of the persons whom the plaintiff had selected, it offers to give them on receipt of notice from the defendant.    The St. of 1888, c. 151, provides that, if the insurance company shall not, within ten days after a written request to appoint arbitrators under the provision in the policy, name three men under such provision, it shall be deemed to have waived the right to an arbitration.    The defendant objects that the offer made by the plaintiff is not a request under the statute, because it does not contain the names of the persons selected by the plaintiff, and that therefore the rejection of it by the defendant cannot be a waiver of the right of reference.    But it is very clear that the statute does not prescribe the only mode in which the company can waive the right to a reference, and it is not at all clear that an offer or request must contain the names of the men selected by the party making it.    The reply to this offer did not suggest that it was refused because it did not conform to the statute and the policy, but was wholly taken up with the statement of reasons why the defendant was not liable.    The substance of the correspondence was that the plaintiff plainly, but, as the defendant contends, informally, offered to refer the question of the amount of the loss under the provision in the policy, and the defendant refused, for the reason that it denied its liability.    This was a waiver of any right it may have had to require an award of the amount of the loss as a condition of maintaining an action against it on the policy.

There are two grounds presented by the auditor's report on which the defendant contends that the policy was void; first, that the building had been vacant for more than thirty days before the loss, and during the continuance of the policy; and, secondly, that the plaintiff was not the sole owner of the property.

The policy was dated January 23, 1889, and purported to insure a dwelling-house, barn, and carriage-house and crib from that date for five years, and contained the provision that the policy should be void " if the premises hereby insured shall become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days without such assent."
The fire was on May 12, 1889.    It would not be competent for

a jury to find upon the facts stated by the auditor that the dwelling-house was occupied between the date of the policy and April 1, 1889.   From that time until the fire there was ample evidence that the dwelling-house was occupied, and that the premises were not vacant.   If the policy was in force from its date, it was therefore rendered void.   *Lyman* v. *State Ins. Co.* 14 Allen, 329.   *Kyte* v. *Commercial Union Assurance Co.* 149 Mass. 116.   See *Hinckley* v. *Germania Ins. Co.* 140 Mass. 38.

But the plaintiff contends that the policy did not become operative until about March 13, 1889, and that the premises were therefore vacant less than thirty days while it was in force. The facts found by the auditor are, that on January 23, 1889, the plaintiff called upon an agent of the defendant company in Fall River, and signed the application for insurance, and was told that the application would be considered and decided upon later.   About two weeks after that time, he received a postal card from the agent informing him that the policy was ready for him.   He did not call for the policy until about March 13, 1889, when he went to the office of the agent, received his policy, and paid the premium named therein.   Previous to the time of receiving the policy, he had paid no money and signed no obligation other than the application.   It is clear, upon this statement, that there was no oral contract of insurance, and no contract contemplated except upon the delivery of the policy and the payment of the premium.   The agent was the agent of the defendant to receive the premium and deliver the policy for it, and there is no evidence that he had authority to deliver the policy except upon payment of the premium.   There was no contract of insurance until the payment of the premium and delivery of the policy.   *Hoyt* v. *Mutual Benefit Ins. Co.* 98 Mass. 539.   *Markey* v. *Mutual Benefit Ins. Co.* 118 Mass. 178, 194, and 126 Mass. 158.   *Myers* v. *Liverpool & London & Globe Ins. Co.* 121 Mass. 338.   *Wheeler* v. *Watertown Ins. Co.* 131 Mass. 1. The premises did not continue vacant for thirty days after the policy took effect, and while they were covered by it.   The words in the policy "shall become vacant," and "so remain vacant for more than thirty days," must mean a vacancy while the contract was in force, and cannot relate back to the date inserted in the application and the policy.   There is no evidence

that the application was acted upon until nearly two weeks after the date of the policy, and no evidence of an oral contract of insurance before the written contract took effect, as there was in *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448, and *Baxter* v. *Massasoit Ins. Co.* 13 Allen, 320, and many other cases. If there were such a contract, the question whether the provision that it should be void if the premises should be unoccupied was in it expressly, or by implication, would arise.

The defendant further contends, that the policy is void on account of a misstatement in the application of the title of the insured. There is no lien on the property insured to secure the deposit note, and the title of the insured is, in itself, immaterial. If he has an insurable interest, it is sufficient to describe the property as belonging to him, unless some inquiry is made of him the answer to which amounts to a false warranty or a misrepresentation. See *Smith* v. *Bowditch Ins. Co.* 6 Cush. 448; *Wilbur* v. *Bowditch Ins. Co.* 10 Cush. 446. The St. of 1887, c. 214, § 59, provides that the application shall not be considered a warranty or a part of the contract except so far as it is incorporated in full into the policy. There is nothing in the policy which requires the insured to disclose or specify his title, or which can be construed as a contract that he has any particular title to or interest in the property. There is no contract or representation, express or implied, in the policy itself, in regard to the title or interest of the insured, unless that he has an insurable interest. The policy provides that it "shall be void if any material fact or circumstance stated in writing has not been fairly represented by the insured." It may be assumed that this means any substantial misstatement of a material fact in the application. See *Ring* v. *Phœnix Assurance Co.* 145 Mass. 426, 430. The answer in the application to the question, " Who owns the building to be insured?" was, "Applicant." This is the misrepresentation which, it is contended, avoids the policy. It will be observed that the policy does not purport to be upon the plaintiff's house. The plaintiff is insured " on two-story dwelling-house." The question in the application does not call for the title to the property, or the particular interest of the applicant in it. It is very general, and does not indicate that it is limited to the legal title, and that it cannot include an equitable owner-

ship.   If an applicant who has an insurable interest has not the legal title, and answers that he is the owner, and if an insurable interest is not ownership, the question whether a material fact is not fairly represented in his answer must depend upon the attending circumstances, and especially upon the nature of his interest.

We think that the plaintiff had an insurable interest in the entire property to its full value, and that his answer that he owned it was a fair representation of the fact.   The plaintiff and his brother had been tenants in common in fee of the property.   Five years before the insurance the plaintiff bought of his brother his undivided interest by an oral contract, and paid the full consideration, the brother promising to make and deliver a deed.   The plaintiff went into exclusive possession of the whole, and has continued in such possession since, claiming title.   His brother never disputed his title, or refused to give a deed, and a week after the fire made a deed in pursuance of his promise.   It is said that the plaintiff had no insurable interest in the undivided half, because he could not enforce the oral contract, and had no legal or equitable title to the premises.

An insurable interest in property need not necessarily be a right in it which can be legally enforced.   We are by no means prepared to hold that a jury could not, upon the facts found by the auditor, have found such part performance of the contract by the plaintiff's brother that it could have been specifically enforced against him.   But we do not think that it is necessary to show an insurable interest which may be called ownership.   Insurance against loss by fire is a personal contract of indemnity.   If a person has such an interest in property that he will suffer pecuniary loss by its destruction, he has an insurable interest.   A valid contract for its purchase is such an interest.   It has been said that a contract for purchase which is made incapable of enforcement by the statute of frauds is not itself such an interest, because the purchaser cannot be compelled to pay the price, and so would lose nothing by the destruction of the property.   But it has been held that such a contract is a valid subsisting contract which may be carried out between the parties, and constitutes an insurable interest in the property.   *Amsinck* v. *American Ins. Co.* 129 Mass. 185.

There was not only that interest in the case at bar, but the distinct and more satisfactory interest, that the plaintiff had fully executed the contract on his part, and had paid the entire purchase money, and would suffer the same loss by the destruction of the buildings as if he had the legal title.   The only answer to the proposition that his pecuniary interest in the house was the same as that of legal owner is, that he could not make a good title to it to a purchaser, and could not hold it against his brother. But this does not affect the fact that the destruction of the house would destroy what he held as the full value of the purchase money he had paid, and it amounts to nothing more than saying that his title was defective.   He had been in possession for five years under claim of title, paying taxes, and receiving the rents and profits.   If he held as disseisor, no question would be made that he had an insurable interest which could be properly described as ownership.   His interest was more real and valuable than if he held merely as disseisor ; he added to the direct pecuniary interest, and to possession under claim of title, the fact that the contract had been in part executed by the other party by submitting to the exclusive occupancy of the plaintiff, and the strong probability that it would be fully carried out on request. To this is to be added the fact that, as in *Amsinck* v. *American Ins. Co. ubi supra,* it was in fact carried out before the commencement of the action.   We think that the plaintiff, whether he could or could not have compelled specific performance of the contract, had an insurable interest in the property to its full value, and properly described himself as owner, and is entitled to recover the full amount.   *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 40.   *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535. *Fletcher* v. *Commonwealth Ins. Co.* 18 Pick. 419.   *Putnam* v. *Mercantile Ins. Co.* 5 Met. 386.   *Converse* v. *Citizens Ins. Co.* 10 Cush. 37.   *Eastern Railroad* v. *Relief Ins. Co.* 98 Mass. 420. *Williams* v. *Roger Williams Ins. Co.* 107 Mass. 377.

According to the terms of the report, there must be judgment for the plaintiff for seven hundred dollars, and interest from the date of the writ.

*Judgment for the plaintiff.*