## CHARLES M. DREW v. SKEENA LUMBER COMPANY, LTD. AND ANOTHER.[1]

May 16, 1930.

No. 27,904.

[1]Reported in 230 N. W. 819.

*Drew & Cain,* for appellant.

*Herbert T. Park,* for Union Indemnity Company, respondent.

Holt, J.

The action is to recover on an indemnity bond wherein plaintiff was obligee, Skeena Lumber Company, Ltd. obligor, and respondent surety. Findings were in favor of respondent, and plaintiff appeals. The lumber company defaulted.

The important facts are these: A. H. Johnson, the assistant secretary of Skeena Lumber Company, Ltd. a Canada corporation, hereinafter referred to as the lumber company, approached plaintiff for a loan, representing that the lumber company had obtained a conditional approval of the state securities commission to register

for sale in this state its $250,000 bond issue, the condition being that the title to its property be cleared up. To do this a loan in the sum of $20,000 was needed; and it had arranged with the Phoenix Corporation of Minneapolis to float or sell its bonds and that corporation had guaranteed that enough of the bonds to pay off the loan could be sold within 60 days. Several conversations were had; and, it appearing that Johnson was ready to pay $2,500 as commission or bonus, the proposition became attractive to plaintiff. But he told Johnson he could not make the loan since for the consideration stated it would be illegal. The proposal finally made and accepted was that plaintiff would indorse the lumber company's note of $22,500, due in instalments, the first of $7,500 in three months, and thereafter $5,000 each month, with interest at eight per cent per annum, and to protect plaintiff on the indorsement he should be furnished an indemnity bond in the sum of $25,000. One Morton representing respondent and one Hoar representing the Phoenix Corporation interviewed plaintiff and were present with plaintiff and Johnson when the plan was consummated, the note of $22,500 was made, the agreement was executed between the lumber company and plaintiff that the company would pay the note promptly and furnish plaintiff an indemnity bond, the bond in suit was given, the note negotiated at the bank, and the proceeds distributed. It appears that $1,500 of the amount went to the Phoenix Corporation, $1,000 to Hoar, its representative, $1,000 to Johnson, $3,650 to Morton, $2,500 to plaintiff, and the balance to the lumber company or to others at its direction.

It also appears that prior to these negotiations a receiver in bankruptcy had been appointed for the lumber company in the proper court of its domicile, who has been in charge of its property ever since. Of this none of the parties admits knowledge except Johnson. Johnson, Morton, and Hoar professed their confidence that with the proceeds of this loan the conditions of the security commission could be complied with and the money to repay the loan would be raised within 60 days by selling the bonds which had been executed and were ready for the market. The lumber com-

pany never was in position to sell its bonds. It defaulted the note negotiated at the bank, and plaintiff was compelled to take it up, paying $22,924.40, no part of which has been repaid to him except $6,482.

The defenses of the surety herein are, in short, that Morton had no authority to execute the bond; that there was a conspiracy to defraud respondent; and that the transaction in the giving of the note was usurious. The decision is rested wholly on the last ground, the pivotal finding of the court being: '

"The transaction aforesaid was negotiated between the parties, other than the bank, with the reasonable expectation that the lumber company would default upon its note, that plaintiff would then take up the note pursuant to his indorsement and would rely for reimbursement upon the liability of the indemnity company under its bond. It was in its true character and purpose a loan by plaintiff to the lumber company of $20,000 at eight per cent interest with a bonus to plaintiff of $2,500, at first inchoate and afterward fully consummated."

Plaintiff vigorously assails the facts stated in the first sentence and contends that if they are not true the conclusion or the really material fact announced in the last sentence has no foundation. That the officers of the lumber company who put through the deal with plaintiff had no reasonable expectation that bonds in a company adjudged a bankrupt and in the hands of a receiver could be sold so as to liquidate this loan is quite clear. The Phoenix Corporation and Hoar, representing it, disclosed no basis upon which a bond issue of the lumber company could be marketed; and the court could well conclude that their expectations went no further than the share they might receive of this loan. There is no evidence of the standing, resources and ability of either the Phoenix Corporation or Hoar to guarantee a bond sale. The extreme care to which plaintiff went in so drawing the contract and indemnity bond that he should take no chance whatever on the success of the bond issue, the only available resource disclosed to him, might be convincing to the trial court that he had no reasonable expectation

that the lumber company could repay the loan. He testified to having seen a financial statement of the' lumber company, but neither that statement nor what it indicated is in the record.

As to Morton's expectations that the lumber company would default, there was ample room for the court to conclude that his testimony in that respect was absolutely false. His conduct shows flagrant dishonesty or such lack of experience in business that it should have dawned on those with whom he dealt that he was not acting for the best interests of his principal. He was but 22 years old. In conjunction with Johnson, of the lumber company, he had sought to negotiate a loan from a bank at Aitkin and from a Mr. Donahue of St. Cloud. In each instance he submitted to this respondent the proposition of furnishing an indemnity bond, but it was turned down. In this deal with plaintiff he did not submit to his principal the giving of a bond, but executed it without its knowledge. Although he collected from this loan $3,650, which included his services and the premium of $375 for the bond, he never reported the writing of the bond nor remitted any part of the premium until after the lumber company had defaulted. There was ample ground for finding a conspiracy to defraud between Morton and the officers of the lumber company. The court made no finding thereon, because he found that plaintiff's connection with a conspiracy was not established, hence acts of the conspirators could not prejudice his cause of action.

We think the evidence supports the finding that the transaction between plaintiff and the lumber company, of which the note of $22,500, the contract given by the company to plaintiff, and the bond in suit are component parts, "was in its true character and purpose a loan by plaintiff to the lumber company of $20,000 at eight per cent interest with a bonus to plaintiff of $2,500, at first inchoate and afterward fully consummated." That being so, the law declares it usurious regardless of any evidence of an intention to give or accept usury. 6 Dunnell, Minn. Dig. (2 ed.) § 9964, and the authorities therein cited.

In addition to facts above stated and bearing on the finding that the transaction between plaintiff and the lumber company was a

loan by the former and not by the bank, it appears that neither Johnson nor the lumber company had had any dealings with the bank and did not ask the bank for a loan nor to negotiate the note. Plaintiff made the arrangement with the bank. He was the bank's customer. The bank opened no account with the lumber company but at once disbursed the amount. We think the finding that plaintiff was the real lender must be sustained. It has been repeatedly held in this state that the trial court may go behind all devices and schemes adopted to hide usurious transactions under the cloak of documents having the semblance of legality. 6 Dunnell, Minn. Dig. (2 ed.) § 9965. In addition to the decisions therein cited may be added Schrump v. Jennrich, 174 Minn. 204, 219 N. W. 86; Pomplun v. Hudson, 177 Minn. 321, 225 N. W. 115, where usury was found under an apparent sale. No doubt the learned trial court realized that defendant had the burden of establishing that the transaction was in fact a loan by plaintiff and not what it purports, viz. a sale of credit or an indorsement of a note for a consideration, and that the proof must come up to the requirements noted in the last cited case.

It is true, as plaintiff claims, that the defense of usury is personal to the borrower, and that one who for a valuable consideration has assumed or agreed to pay an obligation of another cannot interpose the defense that it is tainted with usury. 39 Cyc. p. 1062. But there is an exception in favor of those in privity with the borrower. The giving of the bond in suit was not a separate transaction from the loan which the court found plaintiff made to the lumber company. The money would not have been obtained except for the bond in suit as one of the instruments deemed necessary to consummate the one deal—the loan. And there being usury in that deal, all the instruments employed to carry it out are tainted.

Even though it be the law that usury is a defense personal to the borrower, text books and decisions state that a surety of the borrower may avail himself of the defense of usury. Webb, Usury, p. 438, § 382; Tyler, Usury, p. 409; 39 Cyc. p. 1075; Wilson v.

Knight, 59 Ala. 172; Safford v. Vail, 22 Ill. 327; Stockton v. Coleman, 39 Ind. 106; Cheney v. Dunlap, 27 Neb. 401, 43 N. W. 178, 5 L. R. A. 465; First State Bank v. Niklasson, 116 Neb. 713, 218 N. W. 744; Billington v. Wagoner, 33 N. Y. 31; Moore v. Johnson, 34 W. Va. 672, 12 S. E. 918. Plaintiff however claims that respondent is estopped from questioning the validity of the contract its bond is given to secure, and cites Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L.R.A.(N.S.) 793, 120 A. S. R. 621; County of LeSueur v. Globe Ind. Co. 150 Minn. 120, 184 N. W. 677; City of Minneapolis v. Republic Creosoting Co. 161 Minn. 178, 201 N. W. 414. Those were public contractor's bonds wherein the municipality had omitted some prescribed formality for entering the contract; but the work contemplated was lawful and the parties had proceeded to perform, and it was held that the surety was not in a position to attack the contract which his bond recognized as having been duly made. The bond was given after the bid was accepted and was a separate transaction. Informality is not on a par with usury, which by statute voids every contract made to attain the fruit thereof.

Zimmerman v. Boyd (Cal. App.) 275 P. 509, which plaintiff so much relies on, does not aid him. There Boyd had executed a chattel mortgage to one Gibson to secure a promissory note for $1,200, and thereafter Gibson borrowed $500 of Zimmerman, wherein usury was exacted, and secured the loan by assigning Boyd's note and chattel mortgage. Of course Boyd, not being party or privy to the subsequent usurious loan, could not set that up as a defense when sued on his $1,200 note.

We need not comment on other cases cited to the point that where for a valuable consideration a party agrees to pay a pre-existing debt tainted with usury he may not set up the defense of usury. He is estopped. This is especially illustrated where one buys real estate encumbered by a mortgage securing a usurious loan and assumes the mortgage or deducts the mortgage debt from the price paid. In line with that principle is Commercial Credit Co. v. Semon (D. C.) 33 F. (2d) 356, a guaranty, upon a consideration, apart from and subsequent to the usurious transaction.

Plaintiff also invoked the rule that a paid surety does not occupy the favored position of a gratuitous or accommodation surety. But we have been cited to no case where it has been held that a paid surety under facts similar to those in the case at bar has been held estopped to assert the defense of usury. The evidence is pretty clear that by fraud and conspiracy between the officers of the lumber company and respondent's agent, Morton, the bond was procured without respondent's knowledge and without any consideration then received. That however is not important under the findings. But the fact remains that the bond originated in and was part of the usurious loan made by plaintiff to the principal in the bond, and the surety may defend on the ground that usury tainted every instrument by which the loan was effected.

The fact that the lumber company was in the bankruptcy court of a foreign jurisdiction is of no particular importance to the decision herein. It only bears on the motives and good faith of the officers of that company and incidentally on what credence the court could give to the witnesses Hoar and Morton, who purported to have investigated the feasibility of floating the bond issue of a company and did not go far enough to ascertain that it was and had been for some time in the hands of a receiver.

We find no substantial merit in the assignments of error relating to the admission or exclusion of evidence. Technically what plaintiff learned from inquiries concerning the lumber company made of Sheldon was not rebuttal; but, waiving that, the trial court was not advised as to what material information plaintiff proposed to prove he obtained from Sheldon, and so the ruling furnishes no basis for a reversal.

The order is affirmed.

Wilson, C. J. (dissenting).

The plaintiff's testimony in my judgment stands unimpeached. The fact that he refused to make an illegal transaction ought to be to his credit. Because of such refusal on his part and his subsequently making a transaction in form legal, and which I think was legal, the trial court has found it a subterfuge to cover usury. I

think this finding is without evidence to support it. I see nothing in the evidence which raises an issue of fact that the transaction was not just as claimed by plaintiff. A sale of credit is valid. One may charge for indorsing another's note. This case leads to the conclusion that no man may safely give financial help to another in any form after he has refused to be a party to a proposed usurious transaction. Nor can I find any evidence to sustain the finding that plaintiff had no reasonable expectation that the lumber company could repay the loan. This finding is refuted by many facts and circumstances mentioned in plaintiff's brief. Plaintiff's legal and business care and caution are stricken down by the court's denouncing it as sham and a subterfuge. I feel that plaintiff has been misjudged by substituting an accusation, not even supported by suspicion, for proof.

