PROVIDENCE LUNCH CO., INC. *vs.* PENNSYLVANIA FIRE INSURANCE CO. OF PHILADELPHIA.

MAY 26, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This is an action in assumpsit on a policy of fire insurance. At the conclusion of testimony in the Superior Court the trial justice denied defendant's motion for a direction of a verdict and directed a verdict for the plaintiff. The case is here on exception of the defendant to each of these rulings and on its exception to numerous rulings admitting or excluding testimony.

The plaintiff leased a section of a building for the purpose of conducting a restaurant. In accordance with its agreement with the lessor, the plaintiff made certain improvements to said section, including the installation of a heating plant, a new ceiling and panels on the side walls. The policy covered "the insured's insurable interest in improvements and betterments to the above described building." After the fire occurred, the defendant, without waiving any defense to liability, agreed with the plaintiff as to the value of certain improvements and also as to the amount of damage caused to the same by fire. No question of fraud is involved. The verdict was directed

on the theory that the amount of loss was fixed by the agreement and that proof of compliance by the plaintiff with the terms of the policy had been established.

The defendant contended that plaintiff had failed to show any insurable interest in the damaged property, which had been so affixed to the realty as to be a part thereof and became the property of the lessor.

The lease required the lessee to make certain improvements and betterments, but as to them no title was reserved to the lessee. By the terms of the lease the plaintiff agreed that "at the said expiration or sooner termination thereof (it) will quietly and peaceably surrender up possession of the leased premises to the said lessor, his heirs and assigns in as good order as they now are or may be put in, ordinary wear and tear and damages by the elements excepted."

The plaintiff contends that by the above-quoted clause it was required, at the end of its term or at the sooner termination of the lease by fire, to restore such improvements and betterments for the benefit of the lessor.

The lease contained another provision which is somewhat inconsistent with said clause and provides as follows: "It is mutually agreed that in case the building in which said leased premises are located or the leased premises shall be damaged by fire or other unavoidable casualty so that said leased premises are unfit for occupancy and use for the purposes for which they are being used by the lessee, a just abatement of the rent shall be made until the leased premises shall be properly repaired by the lessor, provided, however, that if said building is damaged by fire or other unavoidable casualty to the extent of 45% thereof or more, and if the lessor shall elect not to repair or rebuild the said building, and does not repair or rebuild the said building, then this lease shall terminate at the time of such damage." From this proviso it is clear that, in the event that the building became damaged by fire to the extent of 45% thereof, the lessor was not bound to repair but would be at liberty to elect to terminate the lease. In the event that

the lessor, acting under this provision, elects to terminate the lease, we think a reasonable construction of the two clauses would be to the effect that the plaintiff, the lessee, would not be required to restore the improvements or betterments. It would seem absurd to hold that the parties, having stipulated as to their rights in the event of fire, intended to agree that the lessor, after electing not to repair, might declare the lease terminated and at the same time require the lessee, which has lost its tenancy, to restore the premises to their former condition for the sole benefit of the lessor.

Was the lessor bound to repair when the damage to the building was less than 45% thereof?

If the above proviso were not contained in the lease, it could be argued with much force that the lessor had an option either to repair or to refuse to repair; but as the parties to the lease have, by the proviso, undertaken to state when the lessor may refuse to repair, it is reasonable to assume that, if the damage was less than 45%, they intended that the lessor must repair.

Having found that if the damage was less than 45% the lessor was bound to repair, the next question is whether in such circumstances the lessor was bound to restore the improvements and betterments. As to this question the language of the lease is not entirely clear, but, considering the lease as a whole, we think the lessor did not intend to covenant to restore the improvements and betterments which the lessee made at its own expense and for its own benefit. See *Phoenix Ins. Co.* v. *Shulman Co.*, 125 Va. 281. It is reasonably clear that plaintiff believed that, in the event that the improvements and betterments were damaged by fire, it had the burden of restoring them. The policy was evidently obtained for the purpose of protecting the plaintiff's interest in these improvements and betterments. The policy is not one to protect the lessee's general leasehold interest. The lessor required the lessee to pay for insurance on the plate glass windows. Had the lessor

supposed it was his duty to restore said improvements and betterments it is probable that he would have required insurance for his protection as to these items.

Whether the lessor made such repairs does not appear. It does not clearly appear whether the lessor terminated the lease, and there is no evidence to show whether or not the building was damaged "to the extent of 45% thereof." Counsel for defendant made a vigorous and prolonged attempt to ascertain from the plaintiff's witnesses what the percentage of damage to the building was, but was prevented by adverse rulings—to each of which exception was taken—from eliciting any information relative to this important question.

Having found that in the event of damage to his property by fire the lessor was not bound to restore the improvements and betterments, it seems to follow that the plaintiff had an insurable interest in such improvements and betterments. It has frequently been held that: "If a person has such an interest in property that he will suffer pecuniary loss by its destruction, he has an insurable interest." *Wainer* v. *Ins. Co.*, 153 Mass. 335. As the plaintiff is not bound, in the event of damage by fire, to restore the improvements and betterments in question, for the lessor's benefit, it is clear that the plaintiff's loss is not measured, necessarily, by the damage to the improvements and betterments. The question is one for a jury when further evidence has been adduced.

It appears that the policy was issued to the Minerva Cafeteria, which was—formerly, at least—a copartnership. It was contended at the trial that the name "Minerva Cafeteria" was the trade name for Providence Lunch Company, Inc., and that after the policy was issued this fact was reported to a Mr. Rathbun, the insurance agent, and that he waived this irregularity. The trial justice erred in denying the defendant the right to show that Mr. Rathbun was without authority to make such waiver.

The exception to the refusal to direct a verdict for the defendant is overruled. Exceptions 5, 6 and 8 are also overruled.

The exception to the direction of a verdict for the plaintiff is sustained. Exceptions 1, 2, 3, 4, 7, 9, 10 and 11 are sustained and the case is remitted to the Superior Court for a new trial.

*McGovern & Slattery, George K. Demopoulos*, for plaintiff.
*Rosenfeld & Hagan, C. Bird Keach*, for defendant.