CHEROKEE FOUNDRIES, INC. *v.* IMPERIAL ASSUR. CO.

(*Knoxville,* September Term, 1948.)

Opinion filed March 11, 1949.

Goins & Gammon and P. H. Thach, both of Chattanooga, for plaintiff in error.

Sizer & Cameron, of Chattanooga, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

Fry and Stewart, trading as Cherokee Foundries, Inc., sued Imperial Assurance Company for $12,000.00 on an alleged insurance contract for damages done to an iron foundry by a fire of unknown origin on the night of April 30—May 1, 1946. The Court of Appeals affirmed the judgment of the Circuit Court directing a verdict for

defendant at the close of plaintiffs' evidence. By its petition for *certiorari* Cherokee Foundaries insists that this was error.

Cherokee Foundries entered into an oral contract of purchase of this foundry from its owners, Jones Machinery & Foundry Company, for a cash consideration of $25,000.00. For the purpose of paying the cash purchase price, Cherokee Foundries arranged through the American Trust and Banking Company of Chattanooga for an R. F. C. loan of $20,000.00. The foundry consisted of a lot with appropriate building and equipment for the operation of the foundry therein. The loan in question was to be evidenced by a note, payment of which was to be secured by a deed of trust creating a first lien on this property, real and personal.

The deed of conveyance from Jones Machinery & Foundry Company to Cherokee Foundries, the deed of trust and the note to be executed by the latter and opinion on title, were all prepared during the day of April 30, 1946 and placed in the keeping of American Trust and Banking Company. The parties were to meet at this bank on the morning of May 1 for the purpose of executing and delivery of these various instruments and payment of the purchase price, thereby completing the transaction.

During the afternoon of April 30, Cherokee Foundries, acting through Stewart, called at the office of L. W. Rhodes, who was the agent in Chattanooga for Imperial Assurance Company, for the purpose of procuring fire insurance of $12,000.00 upon the building and equipment of this foundry. Rhodes issued on that date an invoice wherein it was recited that fire insurance policy in the amount of $12,000.00 of Imperial Assurance Company

covered "building and contents of foundry, the policy to expire "4-30-47". This invoice was placed in the mail and received by Cherokee Foundries in due course on May 1, 1946. The policy was never issued and premium therefor was never paid, though tendered and refused some days later. The policy which would have been issued did not contain a clause providing for sole and unconditional ownership of the property by the insured.

At the close of the work day at the foundry on April 30, key to the place was turned over to Cherokee Foundries. The employees were assembled and told by Cherokee Foundries that their employment would continue except that commencing the next morning (May 1) their employer would be Cherokee Foundries.

Some time during that night the foundry building and its contents were almost completely destroyed by the aforesaid fire. The deed, note and deed of trust heretofore mentioned were never executed. Jones Machinery and Foundry Company collected fire insurance in an unknown amount on a policy or policies which it carried. About three weeks later it conveyed the real estate upon which the foundry had been located and the damaged equipment to Cherokee Foundries for a consideration of $5,500.00.

When the Circuit Judge directed a verdict in favor of the Insurance Company at the close of the plaintiffs' evidence he said this:

"These parties didn't buy this property until after the fire, and that they had no insurable interest in the property at the time the fire occurred".

The Court of Appeals, in affirming the judgment of the Circuit Court, said:

"It is apparent that none of the parties to the original agreement considered it as binding because no effort was made by any of the parties thereto to enforce it. We have therefore concluded from the proof that plaintiff did not have an insurable interest in the foundry when the fire occurred."

■ The question made is whether Cherokee Foundries had an insurable interest in the property damaged or destroyed by the fire. It is elementary that it cannot recover if it did not have such interest. Our search has failed to find any case of our own deciding this question on the facts which we have here.

*Baird* v. *Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 663, 667, 162 S. W. (2d) 384, 390, 140 A. L. R. 1226, by quotation from *Aetna Ins. Co.* v. *Miers*, 37 Tenn. 139, 141, said:

" 'What is an insurable interest in property, is not very clearly and distinctly settled in the books. It is said that it may be proved, without the evidence of any legal or equitable title to the property insured. . . . any interest in the subject matter, or property insured, is sufficient to sustain an insurance of real estate.' "

■ Undoubtedly, the majority rule, and possibly the unanimous rule, by which it is to be determined whether the insured had an insurable interest in the destroyed property is that stated by the decision in 1896 of the U. S. Supreme Court in *Harrison* v. *Fortlage*, 161 U. S. 57, 16 S. Ct. 488, 490, 40 L. Ed. 616, 619, as follows:

"It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will

suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property''.

The point upon which Courts disagree is whether there is any insurable interest in a prospective purchaser under a contract that is unenforceable by or against such person. That is the situation we have here, because the oral contract in question comes within the provisions of two of our Statute of Frauds Acts, to wit, Code, Section 7197, (a part of the Uniform Sales Law) and Code, Section 7831 (4) providing that in the absence of writing signed by the party to be charged no action shall be brought, etc. on the contract for a sale of lands.

Consideration of the question of the application of the Statute of Frauds here in determining the question stated will be simplified and brought directly to the point by eliminating the respondent, Insurance Company, from consideration in connection with the part which the Statute of Frauds may have in determining the question. The Insurance Company is not a party to the oral contract, nor a privy thereto; hence, a third person (stranger) to this contract. The well established rule is:

''A third person can not interpose to arrest the execution of the contract, on the ground that the requirement of the statute has not been complied with, where the vendor admits the agreement and is willing to perform it, and the purchaser is alike willing to accept such performance.'' *Sneed* v. *Bradley*, 36 Tenn. 301-306. See also *Roberts* v. *Francis*, 49 Tenn. 127, 135.

The text of 29 American Jurisprudence, page 294, referring to a party to the contract is this:

''However, one has no insurable interest in a thing the only right to which arises under a contract which is void or unenforceable, either at law or in equity.''

The same volume in the text at page 306-307 says:

"The insurable interest of the vendee is not defeated by the fact that the contract of purchase is unenforceable under the statute of frauds."

The contradictory statements just quoted from the text of American Jurisprudence are attributable to the fact that the rule stated in the text first quoted is based upon this statement of the Iowa case of *Hessen* v. *Iowa Automobile Mut. Ins. Co.*, 195 Iowa 141, 190 N. W. 150, 152, 30 A. L. R. 657, 661:

"A person has no insurable interest in a thing where his only right arises under a contract which is void or unenforceable either at law or in equity."

The contrary last above quoted rule stated in the text of American Jurisprudence is predicated upon this statement of the Massachusetts case of *Wainer* v. *Milford Mutual Fire Ins. Co.*, 153 Mass. 335, 26 N. E. 877, 880, 11 L. R. A. 598, 601:

"It has been said that a contract for purchase which is made incapable of enforcement by the statute of frauds is not itself such an interest, because the purchaser cannot be compelled to pay the price, and so would lose nothing by the destruction of the property. But it has been held that such a contract is a valid subsisting contract, which may be carried out between the parties, and constitutes an insurable interest in the property."

In that case the insured was held to have an insurable interest but he "had paid the entire purchase money . . . had been in possession for five years under claim of title, paying taxes and receiving the rents and profits".

From the moment Cherokee Foundries applied for this insurance to the moment of the next day when the parties were to meet at the bank and complete the

transaction, it was a matter entirely within the whim and caprice of Cherokee Foundries as to whether it would pay the purchase price and take the property if the seller elected (a matter, too, entirely subject to its whim) to let the Cherokee Foundries have the property for the stated purchase price, or at all. Either could repudiate the oral agreement with impunity, because of the Statute of Frauds. Their status remaining the same, they could by mutual agreement just as easily have postponed the meeting at the bank for the completion of the transaction to any date less than twelve months after the Cherokee Foundries applied for this insurance, and upon the arrival of the day fixed, either party could have repudiated without resulting liability the oral contract upon which the insured here bases his right to recover the insurance.

So, whether the insurance policy in question was a policy coupled with an interest was eventually dependent upon the whim of either the Cherokee Foundries or the seller. As a matter of fact, one or both of the parties did elect not to go on with the contract on the next morning. The deeds, etc. remained unexecuted. The proposed seller collected the insurance which it carried as the owner of the property partially destroyed by the fire. It subsequently sold what was left of it to Cherokee Foundries under a new agreement.

On principle, the sound rule seems to be that one whose only right of purchase is under an oral contract which is unenforceable against him or the seller, and who, in fact, either at his own instance or that of the seller, or both, elected finally to reject the contract, ought not to be allowed to recover on an insurance policy for a fire which occurred during the existence of that

status between the parties. An opposite conclusion can lead only to confusion and doubt as to when such an insurance contract is a wager policy or one coupled with an insurable interest, and would be, it seems to us, contrary to sound public policy.

For the reasons stated, we are in agreement with the holding of the Court of Appeals that under the facts of this case Cherokee Foundries did not have an insurable interest in the foundry. Accordingly, the petition for *certiorari* is denied.

All concur.