PHALEN PARK STATE BANK v.
JEAN J. REEVES AND OTHERS.
FCM INSURANCE COMPANY, APPELLANT.

251 N. W. 2d 135.

February 18, 1977—No. 45882.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne,* and *O. C. Adamson II,* for appellant.

*Thomson, Lovett, Wahlfors & Moran* and *James L. Wahlfors,* for respondent bank.

Heard before Rogosheske, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

Yetka, Justice.

This is an action brought by the Phalen Park State Bank (the bank) against FCM Insurance Company (FCM) to recover under the mortgage clause contained in a fire insurance policy issued by FCM to the bank's mortgagors, Jean J. and William Reeves (the insureds). The insureds intervened in the action as

plaintiffs asserting their claim to the insurance proceeds. The case was tried before a jury February 18, 1975. At the conclusion of the trial, the court granted the bank's motion for directed verdict against FCM, and ordered judgment entered for the bank, ruling that it was entitled to recover $38,686.33, the full amount due on the mortgage note. As to the insureds' claim, the jury returned a special verdict finding that the fire which destroyed the insured property had been deliberately set at the instance and request of William Reeves. Both FCM and the insureds appealed from the judgment and the trial court's order denying their motions for new trial. However, the insureds' appeal has been dismissed by order of this court. As to FCM's appeal, we reverse and remand for a new trial.

On August 3, 1971, the insureds executed a mortgage note in favor of the bank in the amount of $34,000 bearing interest at the rate of 7 1/2 percent per annum. The note was secured by a mortgage of the insured premises. Of the proceeds of the loan, $22,715.06 was disbursed by the bank according to the insureds' instructions and the balance of $11,284.94 was retained in escrow to secure the bank against an outstanding real estate tax lien and an attorneys lien.

The insureds defaulted on the note and consequently the bank commenced foreclosure proceedings pursuant to Minn. St. c. 580. The bank purchased the property at the sheriff's sale on December 27, 1972, for $38,162.17, the balance then due on the mortgage note plus foreclosure costs.

In December 1972 the bank received notice that the fire insurance provided by the insureds had been terminated. It notified the insureds of the termination and demanded that they replace the insurance. In February 1973 the insureds contacted insurance agent Robert Averbeck, who secured a replacement policy through FCM in the amount of $50,000. The policy was issued by FCM on February 11, 1973, and delivered to the Reeves on March 8, 1973. On March 15, 1973, the building on the subject property was destroyed by fire.

The bank filed its proof of claim July 2, 1973, 5 days after the insureds' period of redemption from the foreclosure sale had expired. The bank presently holds the fee interest in the insured property.

On appeal FCM contends that the policy was invalidated by the bank's failure to disclose the foreclosure of its mortgage at the time the policy was issued and by the absence of any insurable interest in the bank. Alternatively, FCM argues that if the policy is valid then the bank's recovery must be reduced by the amount of the escrow funds retained by it, and that upon payment of that reduced amount the bank should be directed, in accordance with the provisions of the mortgage clause, to convey its fee interest in the insured property to FCM.

■ Averbeck, the agent who arranged the insurance policy, testified that he called the bank to advise it that a replacement policy was being issued by FCM and that coverage had been bound. He did not request any information from the bank. He further testified that he had made no inquiry of the insureds regarding the status of the mortgage, that he had written thousands of policies without ever requesting such information, and that he had never seen an insurance application form which requested such information. The insurance application submitted by the insureds required no such information. Averbeck did testify that if he had known of the foreclosure, he would not have placed the insurance.

Similarly, FCM's vice president stated it was the company's policy to decline to insure property under foreclosure. A property underwriting supervisor for Aetna Insurance Company testified that insurers normally refuse to insure such property; however, he also stated that his company had no systematic way of detecting the existence of a mortgage foreclosure.

We are unaware of any authority, nor has any been cited, requiring a mortgagee, upon application by its mortgagor for a policy of fire insurance covering the mortgaged premises, to disclose to the insurer the foreclosure of the mortgage. While the

bank's interest is protected under the policy's mortgage clause, it is not the insured and is not required to join in the application, nor does the policy itself impose any duty of disclosure upon it. Moreover, the record fails to reveal an intentional withholding of notice of the foreclosure or other breach of good faith or fair dealing on the part of the bank. The failure of FCM to discover the foreclosure must rest entirely on its shoulders for not making adequate inquiry.

 While the policy withstands attack on that ground, we believe that a substantial possibility of its invalidity is raised with respect to FCM's contention that the bank lacked an insurable interest. While we have not had the occasion to so rule, most courts apparently hold that an insurable interest may not be predicated on a contract which is void or unenforceable.[1] FCM argues that the bank, by charging interest on the undisbursed portion of the proceeds of the mortgage note, exacted a usurious rate of interest, rendering the note and mortgage void, Minn. St. 334.03, and therefore lacked an insurable interest.

Our research has not uncovered a decision which involves the precise issue presented in this case—whether an insurable interest can arise out of a usurious mortgage. However, the decisions we have found which considered the broader issue of whether an insurable interest can arise out of a void or unenforceable contract persuade us that the answer to the question is that it cannot.

In Cherokee Foundries, Inc. v. Imperial Assur. Co. 188 Tenn. 349, 219 S. W. 2d 203 (1949), the Tennessee Supreme Court held that a purchaser of real property under an oral contract of sale, unexecuted at the time of the fire, lacked an insurable interest because the contract was unenforceable under the statute of frauds. The court found:

"From the moment Cherokee Foundries applied for this in-

---

[1] See, 4 Appleman, Insurance Law and Practice, § 2125; 3 Couch, Cyc. of Insurance Law 2d, § 24:4; Annotation, 9 A. L. R. 2d 181; 43 Am. Jur. 2d, Insurance, § 500; 44 C. J. S., Insurance, § 180.

surance to the moment of the next day when the parties were to meet at the bank and complete the transaction, it was a matter entirely within the whim and caprice of Cherokee Foundries as to whether it would pay the purchase price and take the property if the seller elected (a matter, too, entirely subject to its whim) to let the Cherokee Foundries have the property for the stated purchase price, or at all. Either could repudiate the oral agreement with impunity, because of the Statute of Frauds. Their status remaining the same, they could by mutual agreement just as easily have postponed the meeting at the bank for the completion of the transaction to any date less than twelve months after the Cherokee Foundries applied for this insurance, and upon the arrival of the day fixed, either party could have repudiated without resulting liability the oral contract upon which the insured here bases his right to recover the insurance.

"So, whether the insurance policy in question was a policy coupled with an interest was eventually dependent upon the whim of either the Cherokee Foundries or the seller. As a matter of fact, one or both of the parties did elect not to go on with the contract on the next morning. The deeds, etc., remained unexecuted. The proposed seller collected the insurance which it carried as the owner of the property partially destroyed by the fire. It subsequently sold what was left of it to Cherokee Foundries under a new agreement.

"On principle, the sound rule seems to be that one whose only right of purchase is under an oral contract which is unenforceable against him or the seller, and who, in fact, either at his own instance or that of the seller, or both, elected finally to reject the contract, ought not to be allowed to recover on an insurance policy for a fire which occurred during the existence of that status between the parties." 180 Tenn. 355, 219 S. W. 2d 206.

In the case at bar, if the mortgage was usurious, it could have been avoided by the insureds at the time the insurance was issued and, more importantly, at the time of the loss. The Cherokee Foundries decision implies that an insurable interest may have

arisen had the oral contract been performed by both parties, and, indeed, it has been so held. Wainer v. Milford Mutual Fire Ins. Co. 153 Mass. 335, 26 N. E. 877 (1891). In this case, however, although the mortgage has been foreclosed, it is not clear to us that the insureds do not have grounds to set aside the sale. The claim of usury was preserved to the insureds as against the bank by the court below.

Moreover, assuming usury could be proved, then the bank's loss is not the result of the risk insured against but rather its own, illegal act. In Cherokee Foundries, the court cited and adopted the general rule regarding the existence of an insurable interest as set forth in Harrison v. Fortlage, 161 U. S. 57, 65, 16 S. Ct. 488, 490, 40 L. ed. 616, 619 (1896):

"* * * It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss * * *."

If the mortgage is usurious, it is void, and the bank has no right to either the interest accrued or the principal. Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 296 N. W. 911 (1941). The bank thus loses nothing by reason of the destruction of the property for it had nothing to which it had an enforceable right.

The issue of insurable interest has also arisen where the purchaser of an automobile has failed to comply with statutory conveyancing requirements. In Mackie & Williams Food Stores, Inc. v. Anchor Cas. Co. 216 F. 2d 317 (8 Cir. 1954), the Circuit Court of Appeals held, applying Missouri law, that no insurable interest arose out of a transfer in which the purchaser did not comply with automobile transfer requirements. Its review of the Missouri decisions reveals that the Missouri Supreme Court views its motor vehicle act as reflecting the highest concern for the public welfare in preventing dealing in stolen vehicles, thus requiring strict adherence to the law even in collateral matters such as insurance. See, also, Reece v. Motors Ins. Corp. 116 F. Supp. 394 (W. D. Okla. 1953).

Under Minn. St. 334.03, a usurious transaction is *void*. We believe that this statute also evinces the highest concern for the public welfare, thereby further persuading us that an insurable interest cannot arise out of a usurious mortgage.

The issue of the usurious nature of the mortgage note apparently came to light for the first time when the insureds moved to intervene. In their complaint in intervention the insureds alleged that the mortgage note was usurious and requested that it be declared void and set aside. The special-term judge, before whom the motion was made, struck that portion of the complaint, preserving that claim to the insureds for subsequent, independent litigation.

At trial FCM was prevented from litigating the issue of usury as it affected the bank's insurable interest. In sustaining the bank's materiality objection, the trial court apparently felt the action of the special-term judge precluded the trial of that issue for any purpose. On appeal the bank argues that the defense of usury should have been affirmatively pleaded in its answer. Rule 8.03, Rules of Civil Procedure. We disagree with the positions of both the trial court and the bank.

First, the order of the special-term judge, with respect to the usury issue, was directed only at the insureds and was intended to avoid delay in an action that was set for trial within 12 days of the motion. By its terms it had no effect on the defenses to be raised by FCM. Second, the existence of an insurable interest is an element of the bank's claim, affirmatively alleged by it in its complaint and specifically denied by FCM in its answer. We believe that this denial properly raised the issue, Rule 8.02, Rules of Civil Procedure, and that FCM should have been permitted to litigate it at trial. For this reason we must reverse and grant FCM a new trial so that the issue of whether the bank has an insurable interest may be determined.

■ In the event that the bank prevails on that issue and FCM is required to indemnify it under the policy, its recovery must be reduced by the amount of the mortgage proceeds which remain

in the hands of the bank and which it is not obligated to disburse.

The amount payable to the mortgagee "as his, her, its or their interest may appear" under the mortgage clause is measured by the indebtedness which the mortgagor owes under his note and mortgage. FCM contends that the insureds' obligation as mortgagors was that amount due on the note less the $11,284.94 retained by the bank in the escrow accounts.

In Booker T. Theatre Co. v. Great American Ins. Co. 369 Mich. 583, 120 N. W. 2d 776 (1963), a mortgage was executed as security for a loan and the assumption of liability as endorsers on two notes. The insured-mortgagor's fire insurance policy contained a mortgage clause. On the date of the fire which destroyed the mortgaged property the mortgagees had already advanced the amount of the loan but had not made any payments pursuant to their liability on the notes. Subsequently, the notes fell due and the mortgagees satisfied them. Contrary to the insurer's contention that its liability was limited to the amounts advanced at the time of the fire, the court held that liability extended to the subsequent payment of the notes the mortgagees had endorsed.

The above decision was distinguished from First Federal Sav. & Loan Assn. of Westfield v. American Equitable Assur. Co. 84 F. Supp. 519 (D. N. J. 1949). In that case the mortgagee made a loan to the mortgagor in the amount of $16,000, secured by the mortgage, of which it had advanced $4,500 at the time of the loss by fire. The mortgagor's fire policy contained a mortgage clause. Subsequent to the fire, the mortgagor made another advance of $5,000. The mortgagee made a claim for the entire damage to the mortgaged premises of $8,350. The court held, however, that the insurer's liability was limited to the amount advanced at the date of the fire.

Both of these cases involve situations in which the mortgagees, on the date of the fire, were essentially in possession of a portion of the proceeds of the mortgage. Whether an insurer is entitled to a credit for that reserve, according to those decisions, turns on the nature of the mortgagee's liability with re-

gard to the reserve. In the first case, the court determined that the mortgagee was under an existing obligation, on the date of the fire, to pay the notes it had endorsed. In the second case, the court held that the mortgagee, due to the loss, was not under any further obligation to make advances under the loan.

Thus, we hold that FCM's liability as to the $11,284.94, which the bank apparently still retains, is dependent on the obligation of the bank, or the lack thereof, to pay it either to the mortgagors or to the lien claimants. However, it is not clear to us what its obligations are with respect to that amount. On retrial, should the bank's mortgage be held valid, the trial court must determine what portion of the $11,284.94 still held by the bank should be used to remove liens from the real estate to the extent that those liens can be validly perfected in order to make the title marketable. The bank may also have a right to other setoffs or equitable defenses which are not present in this record.

■ The final issue raised is whether the bank is obligated to convey to FCM its fee interest in the subject property pursuant to the following provision of the insurance policy:

"* * * [W]henever this company [FCM] shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company his interest, upon such payment, in the said mortgage together with the note and debts thereby secured."

Both parties apparently agree that absent the foreclosure proceedings, payment to the bank pursuant to the above clause would have obligated it to transfer the mortgage note to FCM. Thus, the heart of the issue is whether the foreclosure, the bank's purchase of the mortgaged property at the foreclosure sale, and the expiration of the period of redemption should defeat the insurer's rights under the above clause.

It is apparently the generally accepted rule that a mortgage clause contemplates the foreclosure of the mortgage and therefore, the mortgagee is fully protected throughout the proceedings. See, 5A Appleman, Insurance Law and Practice, § 3403. See also, 11 Couch, Insurance 2d, § 42:712, which states:

"* * * [A] change in the character of interest from that of mortgagee to that of owner, effected by a sale and purchase on foreclosure, is not sufficient to defeat the insurance granted the mortgagee, since it must likewise be considered that the possibility of such a change was within the contemplation of the parties when the contract was made."

In Carlson v. Presbyterian Board of Relief, 67 Minn. 436, 70 N. W. 3 (1897), in the slightly different context of both mortgagor and mortgagee claiming insurance proceeds paid on loss following foreclosure and purchase by mortgagee before expiration of period of redemption, this court embraced the position outlined in Couch op. cit. *supra.*

Thus, the bank's rights are preserved under the above clause of the policy regardless of the foreclosure proceedings. The provision also contemplates the subrogation of the insurer to the *rights of the mortgagee under the mortgage.* Cf. Sterling Fire Ins. Co. v. Beffrey, 48 Minn. 9, 50 N. W. 922 (1892). The rights of the bank at the time of the fire when liability arose under the policy were: (a) to the payment of mortgage note, or (b) to the fee interest in the mortgaged premises. In Carlson v. Presbyterian Board of Relief, 67 Minn. 436, 440, 70 N. W. 3, 4, this court observed:

"[A mortgagee] after the foreclosure had the same interest in the dwelling house insured as before * * * . It is wholly immaterial whether the defendant, after the foreclosure, was technically a purchaser, and not a mortgagee, and that its lien and claim on and to the house secured its bid, and not its debt * * *."

The purpose and intent of the above clause in the policy clearly

is to allow FCM as insurer to succeed to the rights of the bank as mortgagee. At the time of the fire those rights included the fee interest in the mortgaged premises upon failure of the insured to redeem. That event having occurred, upon payment by FCM to the bank pursuant to the above clause the bank should convey the fee interest in the mortgaged property to FCM. This is no more than FCM would have acquired had the fire occurred under similar circumstances before foreclosure, and FCM had commenced the foreclosure proceedings.

Thus, on remand it must first be determined whether there was a valid mortgage. Secondly, if the mortgage is determined valid because usury does not exist, it must then be determined what amount of the mortgage proceeds retained by the bank should be used to remove liens from the property. And, finally, if payment is to be made by FCM, it will be subrogated to the bank's fee interest in the property.

In conclusion, we stress that our holding has resulted from and is limited to the unique facts and circumstances presented in this case. We do not intend by this decision to depart from the general rule in this state that the defense of usury is personal to the borrower. See, Drew v. Skeena Lumber Co. Ltd. 180 Minn. 358, 230 N. W. 819 (1930). Nor do we expect that the subrogation language of a standard mortgage clause will always result in a transfer of the fee interest to the insurer from the mortgagee. Each case, of course, must stand on its own facts.

Reversed and remanded for a new trial.

TODD, JUSTICE (concurring in part, dissenting in part).

I concur in that portion of the majority opinion which indicates that under the peculiar facts of this case and the existing contract situation FCM is entitled to subrogation to the rights of the fee holder and to a conveyance of the real estate title from the bank. This occurs solely because the contract that the insurance company provided to the insureds, in which the bank was a named party in interest, specifically provided for such a

conveyance. We must be careful to note that an insurance company does not insure the land but only the improvements thereon and that absent specific contractual language, it has no right to transfer of title based upon its policy of insurance.

I further agree with that portion of the majority opinion which indicates, under the facts of this case, that the amount held in escrow must be offset against the face amount of the note. The right of offset, of course, being a contractual right of the bank, must be exercised as a matter of equity.

However, I must respectfully dissent from that portion of the majority opinion which indicates that there is a possible defense of usury in this case. If we were to grant to FCM all the rights of the insureds and presume that all of the evidence that it might offer would be received and decided in its favor, there still would not be an issue of usury in this case. The best that could be established is that a loan was made that created an obligation by the mortgagors to the bank and that some of the funds were placed in escrow to guarantee payment of certain obligations. It must be understood that at that point those funds were no longer assets of the bank but rather represented assets of the mortgagors which were being held by the bank and were a liability of the bank to the mortgagors. An analogous situation would be if the attorney for the mortgagors at the time of the making of the mortgage had been designated as the escrow agent for the funds and the funds were placed in his trust account, which he happened to maintain in the bank. The funds themselves physically would remain with the bank but nobody would raise the question that there was an issue of usury. The fact that the funds remained escrowed by the bank does not change the character of the funds. Since the funds are the property of the mortgagors, they are obligated to pay interest on these funds. I would decide as a matter of law that there can be no issue of usury in this case.

KELLY, JUSTICE (concurring in part, dissenting in part).
I join in the dissent of Mr. Justice Todd.

The bank asserts that usury was not alleged in the pleadings of FCM and that it should not be permitted now as a defense. FCM asserts that its answer denying the allegations of the complaint put upon the bank the burden of demonstrating that it had an insurable interest as a mortgagee. Its next contention is that if the mortgage was invalid because the loan was usurious, there was no insurable interest. It appears from the briefs and record before us that FCM did not offer any evidence and does not now claim that there is any evidence of usury other than the fact that the bank had only disbursed $22,715.06 and had retained in escrow the sum of $6,284.94 for the payment of taxes levied against the property and the additional sum of $5,000.00 to secure the mortgage lien from an attorneys lien filed against the mortgaged property in that amount. Thus, if we concede that the issue of usury was pleaded and that the bank would not have an insurable interest if the mortgage was based on a usurious loan, the only question to be resolved in determining if the bank has an insurable interest is: Under the facts presented, was the loan usurious?

There is no claim or showing here that the bank did not act in good faith in holding funds in escrow. The fact that the bank did not disburse the tax money might give rise to a cause of action against it for any interest and penalties accruing to the tax lien for nonpayment, but not to a cause of action for usury. The funds held in escrow for taxes belonged to the mortgagors and were payable on demand, either directly for payment of taxes or to the mortgagors upon proof of payment of taxes. The record is not clear as to who was to pay the taxes. Either of these events, payment of taxes or discharge of the tax lien, could take place within less than 30 days. In the meantime, the bank could not plan on loaning the escrowed funds, set aside as security for the tax lien, that were payable on demand. The money for the attorneys lien was put into a savings certificate at interest and was held in trust for the mortgagors until discharge of the at-

torneys lien or payment of the mortgage. It is obvious that it was for the mortgagors' benefit that the $5,000 was placed in an interest-bearing account because it might be some time before the attorneys lien would be settled. Banks are not permitted to pay interest directly or indirectly on demand deposits. Minn. St. 48.50. In general, demand deposits are those that may be withdrawn in less than 30 days. Minn. St. 48.51. The funds held in a savings certificate were thus taken out of the demand deposit classification. The bank could have insisted on holding the $5,000 in escrow to secure itself against the attorneys lien without giving the mortgagors the benefit of any interest to be earned by issuing a savings certificate. Should this favorable treatment of a customer be grounds for the loss of all money loaned and interest earned on a far-fetched theory of usury?

The legislature, in connection with funds held in escrow by savings and loan institutions for installment mortgages, has apparently determined that monthly payments may be made in advance for insurance, taxes, assessments, ground rents and other charges on an estimated basis by mortgagors, as they expressly permit it by law without requiring the reduction of any interest payments. Minn. St. 47.20, subd. 8. Legislative policy is further disclosed by § 47.20, subd. 8(1), which provides that certain mortgagees, including state banks and trust companies, mutual savings banks, and savings and loan associations, which require mortgagors to pay into an escrow, agency, or similar account for the payment of taxes or insurance premiums with respect to a mortgaged one-to-four-family, owner-occupied residence, pay interest on those accounts. Subdivision 8(3), however, does not require interest payments on such escrow accounts if the mortgagor is given the option of using it or continuing to use it and elects to do so. Interestingly enough, subd. 8(1) also provides: "The requirement to pay interest shall apply to such accounts created prior to [the effective date of this subdivision] as well as to accounts created after [this subdivision is effective]." Thus, the legislature indicates by this law that it is aware of the

practice of banks and other financial institutions using escrow accounts for the payment of taxes and other charges. It apparently has given its blessing to this practice without requiring payment of interest on certain funds in escrow accounts securing mortgages on business property, such as is involved in this case.

We would do no favors for the borrowing public in the long run by finding usury, because lending institutions either would not make loans in cases such as the one involved here, or would insist on a title insurance policy or that funds be put in escrow with a third party. These alternatives, in all probability, would be more cumbersome and more expensive for the borrower.

I recognize that the majority opinion remands the issue of usury and does not decide it. However, FCM has had its day in court. We have before us all the evidence on which it would base its claim that the mortgage was invalid because of usury and we should decide it.

I concur with the majority opinion that if the bank prevails on the issue of usury, the insurer is to be subrogated to the title of the mortgagee.

I also agree that the funds held in escrow should be deducted from the bank's recovery on the insurance policy because equity requires that be done. Fundamental fairness dictates that the subrogation clause should permit FCM, after it pays off the mortgage loan on a loss accruing before the redemption period has expired, to acquire the bank's rights growing out of that loan including any funds held in escrow to perfect the title. Thus, those funds should be assigned by the bank to FCM or deducted from the amount to be paid.

OTIS, JUSTICE (concurring in part, dissenting in part).

I join in the opinions of Mr. Justice Todd and Mr. Justice Kelly.

PETERSON, JUSTICE (concurring in part, dissenting in part).

I join in the opinions of Mr. Justice Todd and Mr. Justice Kelly.