16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Eugene SMITH and wife, Ruby Smith, Plaintiffs-Appellants,
v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellee.
 No. 92-6540.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1994.
 
 Before: NELSON, and BATCHELDER, Circuit Judges; and MATIA, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs Eugene and Ruby Smith appeal the denial of insurance benefits following the fire loss of their home. The district court ruled in favor of the insurance company finding that the facts established the defenses of misrepresentation, fraud, and false swearing. The court below also found that arson was either committed by or procured by the plaintiffs. The district court additionally found that judicial estoppel bars plaintiffs' suit. For the reasons set forth below, we affirm.
 
 
 2
 * This case arises out of a dispute over a fire loss under an insurance policy issued to Eugene and Ruby Smith by Fireman's Fund Insurance Company. At the time of the fire, the plaintiffs' policy provided liability limits of $133,000 for the dwelling, $93,100 for the contents, $26,600 for additional living expenses, $13,300 for appurtenant structures, and $6,650 for debris removal. Under the terms of the policy, plaintiffs submitted a contents inventory to Fireman's Fund on October 24, 1990, and executed and submitted a sworn statement of proof of loss to the insurance company dated October 15, 1990.
 
 
 3
 Fireman's Fund paid the full $133,000 on the dwelling before the contents inventory and proof of loss was submitted. This payment is not in controversy. Fireman's Fund also paid plaintiffs $25,000 as an advance on their contents on April 20, 1990. Fireman's Fund seeks to recover this $25,000 in a counterclaim.
 
 
 4
 After initially stating that plaintiffs' claim would be paid, Fireman's Fund ultimately denied plaintiffs' claim in its entirety. As a defense for denial of the claim, Fireman's Fund alleged that plaintiffs made material misrepresentations in the contents inventory and proof of loss and that plaintiffs burned or procured the burning of their home.
 
 
 5
 With regard to the arson defense, the district court found that credible evidence had been introduced that the fire was intentionally set and that Eugene Smith had ample opportunity to burn or procure the burning of the house. At the time of the fire, plaintiffs were experiencing financial difficulties. Tax returns revealed negative cash flows for the years 1984 through 1989.[1] Despite negative cash flow, the plaintiffs' contents inventory reports claimed purchases in the amounts of $23,168.93 in 1989 and $41,402.00 in 1988. The district court found that plaintiffs had a motive to burn their home since the total insurance proceeds amount to $226,100 while the plaintiffs only owed $67,366.69 on their home.
 
 
 6
 Plaintiffs contend that most of their purchases of household furnishings were made by utilizing a large amount of cash they kept in a briefcase. Plaintiffs testified that the money was accumulated between 1976 and 1983 and that the money was received from Ruby's mother and her aunt, Mrs. Charlsie Talton. Ruby's mother died in 1981, and Mrs. Talton died in 1982 or 1983.[2] Ruby Smith testified that the briefcase contained approximately $200,000 in cash in 1984.[3] Plaintiffs asserted that the money in the briefcase belonged to their daughter Shana.[4]
 
 
 7
 The district court found plaintiffs' contention that the money belonged to their daughter to be "wholly incredible." The plaintiffs used the money to purchase, among other things, bedroom furniture, jewelry, and extensive amounts of alcohol for their wet bar. The district court stated that "taken as a whole, this exercise of complete dominion and control over the briefcase money and its proceeds belies plaintiffs contention that the money belonged to their daughter."
 
 
 8
 While the amount of cash in the briefcase could not be corroborated, several witnesses testified that they had seen the briefcase money on various occasions. Plaintiffs claimed that Ruby and their daughter received $97,440 between the late 1970's and 1983 in cash as a gift from Mrs. Talton and jewelry and other items valued at $27,520 from Mrs. Talton's estate.[5] Evidence revealed that Mrs. Talton's only source of income had been Social Security, that she had received food stamps and that she did not appear to have possessed any valuables in her house.
 
 
 9
 Based on the foregoing facts, the district court stated:
 
 
 10
 Under all of these circumstances, I find that plaintiffs' claims regarding the source of at least part of the briefcase money were misrepresentations made with the intent to deceive and defraud Fireman's Fund. Without some significant source of funds apart from their ordinary income, plaintiffs realized it would have been impossible for them to justify the elaborate claims in their contents inventory. Hence, they fabricated a complicated series of untraceable gratuitous transfers from a deceased aunt who was actually destitute and clearly incapable of transferring such wealth.
 
 
 11
 The district court also found that plaintiffs failed to disclose the briefcase money in a Chapter 7 petition for bankruptcy filed on August 20, 1984. In the bankruptcy petition plaintiffs claimed, under penalty of perjury, that the total value of their personal possessions amounted to $4,010. However, the contents inventory supplied to Fireman's Fund in this action claimed that at the time of the fire plaintiffs had owned household contents purchased prior to 1984 in the total amount of $21,384.67. The district court found that the failure to list these items, including the briefcase money, constituted material omissions sufficient for a finding of judicial estoppel.
 
 
 12
 The plaintiffs were also unable to establish where or when they bought extremely expensive belongings, such as a solid cherry bedroom suite and numerous pieces of expensive leather furniture. The district court found that the plaintiffs made material misrepresentations to Fireman's Fund regarding the value of this furniture with the intent to defraud Fireman's Fund.[6]
 
 
 13
 The district court stated that "at trial plaintiffs exhibited a remarkable propensity to testify untruthfully." Also, the court found that plaintiffs made material misrepresentations and that these misrepresentations were part of a scheme to enhance the extent of exposure by Fireman's Fund under the insurance policy. Accordingly, the trial court denied plaintiffs' claim under the insurance policy and awarded Fireman's Fund $25,000 under their counterclaim. This appeal followed.
 
 II
 A. STANDARD OF REVIEW
 
 14
 In the present appeal, plaintiffs allege both error of law and errors of fact. The first, concerning the application of the doctrine of judicial estoppel, concerns an issue of law. As to this issue, the proper standard for review by this Court is a de novo standard. Daugherty v. Campbell, 935 F.2d 780 (6th Cir.1991), cert. denied, 112 S.Ct. 939 (1992).
 
 
 15
 The remaining issues raised on appeal concern the findings of facts and conclusions made by the trial court concerning misrepresentations by the insureds and Mr. Smith's responsibility for the fire. As to these issues, the appellate court may overturn such findings if it is established that such findings were clearly erroneous. Under Fed.R.Civ.P. 52(a),
 
 
 16
 [f]indings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.
 
 
 17
 A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). A finding of fact can only be deemed clearly erroneous when it is against the clear weight of the evidence. West v. Fred Wright Constr. Co., 756 F.2d 31 (6th Cir.1985).
 
 B. JUDICIAL ESTOPPEL
 
 18
 Plaintiffs' first argument on appeal is that the district court improperly applied the doctrine of judicial estoppel. This Court has stated:
 
 
 19
 The judicial estoppel doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. The purpose of the doctrine is to protect the courts "from the perversion of judicial machinery."
 
 
 20
 Reynolds v. Commissioner, 861 F.2d 469, 472 (6th Cir.1988) (citations omitted). The district court found that plaintiffs were judicially estopped from recovering under the insurance policy any of the proceeds from assets they failed to disclose in their bankruptcy proceeding.
 
 
 21
 We find that the plaintiffs have not been consistent regarding the total value of their personal possessions in 1984.[7] In their bankruptcy petition, plaintiffs claimed the total value of their personal possessions as $4,010. However, in their contents inventory for Fireman's Fund they listed $21,384.67 worth of personal possessions purchased prior to 1984. These inconsistent positions indicate that plaintiffs must be judicially estopped from claiming recovery under the insurance policy for any items they failed to disclose in the bankruptcy proceeding.
 
 C. MATERIAL MISREPRESENTATION
 
 22
 Plaintiffs also contend that the district court committed clear error in finding that they made material misrepresentations with an intent to deceive the insurer. The insurance contract between plaintiffs and Fireman's Fund provides in its supplemental provision:
 
 
 23
 Concealment or Fraud. The entire policy will be void if, whether before or after a loss, an insured has:
 
 
 24
 A. intentionally concealed or misrepresented any material fact or circumstance;
 
 B. engaged in fraudulent conduct; or
 
 25
 C. made false statements;
 
 
 26
 relating to this insurance.
 
 
 27
 Thus, material misrepresentations by plaintiffs would void the insurance policy.
 
 
 28
 The district court found that plaintiffs made material misrepresentations regarding the valuation and acquisition of their personal property. The court also found a pattern of bad faith and of misrepresenting facts to Fireman's Fund and that these misrepresentations were directly related to the claim. The court concluded that the insurance policy was void and that plaintiffs forfeited all claims under the policy. Giving due deference to the factual findings and credibility determinations of the district court, we cannot say that we are left with a "firm conviction that a mistake has been committed." United States Gypsum Co., 333 U.S. at 395. Accordingly, the district court's finding of material misrepresentations is not clearly erroneous and must be affirmed.
 
 D. ARSON
 
 29
 Plaintiffs' final argument is that the district court's finding of arson was clearly erroneous. The fire insurance policy provides in pertinent part:
 
 
 30
 Intentional Loss. We do not provide coverage for a person who is insured under this policy if that person commits or directs an act with the intent to cause a loss.
 
 
 31
 The district court found that the Smiths burned or procured the burning of their home.
 
 
 32
 Fireman's Fund bears the burden of proving the defense of arson. McReynolds v. Cherokee Ins. Co., 815 S.W.2d 208, 211 (Tenn.Ct.App.1991). Fireman's Fund, to prove a defense of arson, "must show by a preponderance of the evidence that the loss was due to a fire of incendiary origin, that the insured had an opportunity to set the fire, and that he had a motive to do so." Id.
 
 
 33
 It is uncontroverted that the fire was of incendiary origin.[8] The district court found that Mr. Smith had ample opportunity to set the fire and that he had a motive due to the plaintiffs' poor financial condition. The district court stated:
 
 
 34
 all of the inferences under the circumstances, including plaintiffs' numerous misrepresentations, support the court's conclusion that plaintiffs burned or procured the burning of their home, and are thus precluded from recovery under the policy.
 
 
 35
 This conclusion is not against the clear weight of the evidence and again the reviewing court is not left with a "definite and firm conviction that a mistake has been committed." United States Gypsum Co., 333 U.S. at 395. Thus, the trial court's finding of arson by the plaintiffs is not clearly erroneous and must be affirmed.
 
 E. FIREMAN'S FUND'S COUNTERCLAIM
 
 36
 The district court granted judgment to Fireman's Fund on its counterclaim for the return of $25,000 it advanced to plaintiffs prior to their submission of the contents inventory and proof of loss. Plaintiffs did not appeal this judgment and thus, it must be affirmed.
 
 III
 
 37
 For the foregoing reasons, the district court's denial of the plaintiffs' claim under the insurance policy and award of $25,000 to defendant Fireman's Fund is AFFIRMED.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The returns show extreme negative cash flow for the two years preceding the fire. In 1988, tax returns revealed a family income and spending deficit of $32,998 and in 1989 the deficit was $20,151
 
 
 [2]
 Despite the large gifts allegedly received by plaintiffs from Mrs. Talton, they were not sure when Mrs. Talton died
 
 
 [3]
 No witness could corroborate plaintiffs' testimony regarding either the amount of cash in the briefcase or the sources of the cash
 
 
 [4]
 Shana was 8 or 9 years old in 1984
 
 
 [5]
 Evidence established that Mrs. Talton's estate was never administered
 
 
 [6]
 Plaintiffs made numerous additional misrepresentations. For example, in a statement of financial affairs, plaintiffs included a tract of unimproved real estate with a value of $38,000. Plaintiffs later admitted they bought the property in 1980 for $7,500 and sold it in 1984 for $8,741. Also, Ruby Smith misrepresented her income from a dog kennel business. She told the fire investigator she earned $3,000 per month from this business, and she told a Fireman's Fund claims adjuster that she grossed $30,000 per year from the business. Tax returns reveal that she never grossed over $20,000 in any single year and that she obtained an average gross income from the business of slightly over $1,500 per month
 
 
 [7]
 In fact, plaintiffs conceded in oral argument that they are judicially estopped from recovering for the loss relating to these previously unreported assets. The briefcase money, while not reported in the bankruptcy action, is not at issue since it was not claimed as lost in the fire
 
 
 [8]
 Fireman's Fund's expert investigator, Mr. Rambo, concluded that the fire was incendiary in origin. Plaintiffs did not present evidence to contradict this conclusion