IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 13, 2024 Session

## HOPE FEDERAL CREDIT UNION v. JENIFER GRIFFIN v. ALLSTATE CORPORATION, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-2866-19      Rhynette N. Hurd, Judge**

———————————————————————

**No. W2023-00310-COA-R3-CV**

———————————————————————

This appeal concerns a dispute over insurance coverage.  After a fire loss, the insured brought a breach of contract claim against her insurer.  The insurer subsequently filed a motion for summary judgment.  The trial court awarded summary judgment to the insurer, finding that the insured was not entitled to coverage for additional living expenses because she did not have an insurable interest in the property and that the insured's contents coverage claim was precluded under the doctrine of judicial estoppel.  The insured appeals. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

Drayton D. Berkley, Memphis, Tennessee, for the appellant, Jenifer Griffin.

Jonathan D. Stewart and Kasey S. Farmer, Chattanooga, Tennessee, for the appellee, Allstate Corporation.[1]

## OPINION

### I.      FACTS & PROCEDURAL HISTORY

---

[1] Ms. Griffin's third-party complaint identifies the third-party defendant as Allstate Corporation. However, the appellee's brief was filed on behalf of Allstate Vehicle and Property Insurance Company.  In the trial court, the appellee maintained that it was improperly styled as Allstate Corporation.

This appeal arises from a dispute over homeowners insurance coverage between Jenifer Griffin and Allstate Vehicle and Property Insurance Company ("Allstate"). In June 2010, Ms. Griffin purchased a home with a loan from Hope Federal Credit Union ("Hope"), which was secured by a deed of trust. Ms. Griffin subsequently defaulted on the loan. Hope began foreclosure proceedings and notified Ms. Griffin that a trustee's sale was scheduled to take place in September 2018. However, that sale was postponed.

In August 2018, Ms. Griffin filed a Chapter 13 petition for bankruptcy.[2] In her bankruptcy petition, Ms. Griffin claimed household goods with a value of only $900.00. She listed her clothing as valued at $150.00 and jewelry as valued at $20.00. She also denied that she owned any electronics, collectibles, or sports and hobby equipment. In February 2019, the bankruptcy court ordered that Ms. Griffin vacate the property and remove all her personal property by March 25, 2019; however, she did not vacate the premises.[3] A week later, Hope foreclosed on the property pursuant to the power of sale in the deed of trust. Thereafter, in April 2019, Hope initiated a wrongful detainer action against Ms. Griffin in general sessions court. While the wrongful detainer action was pending, a fire occurred at the property in May 2019. In June 2019, the general sessions court entered judgment in favor of Hope. Ms. Griffin then appealed the detainer action to circuit court.[4]

After the fire, Ms. Griffin submitted a sworn statement in proof of loss to Allstate, wherein she reported an "actual cash value" of her personal property of $1,000,000.00. She also submitted contents inventory sheets detailing what items were damaged or destroyed and their original costs and ages. In November 2019, in the context of pending litigation involving Ms. Griffin and Hope, she filed a first amended answer and third-party complaint seeking relief against Allstate for breach of contract and bad faith refusal to pay additional living expenses pursuant to the insurance policy.[5] Ms. Griffin subsequently filed a second amended answer and third-party complaint alleging breach of contract by Allstate for failing to provide additional living expenses and contents coverage pursuant to the insurance policy.[6] In response, Allstate filed an answer denying liability.

In August 2021, Allstate filed a motion for summary judgment. In support of the motion, Allstate submitted a statement of undisputed facts and a memorandum of law,

---

[2] Ms. Griffin previously filed two petitions for Chapter 13 bankruptcy. The bankruptcy court dismissed both cases due to her failure to "timely satisfy the filing requirements[.]"

[3] The bankruptcy court dismissed the third case in June 2019 for failure to abide by court orders.

[4] In circuit court, Hope filed an amended complaint against Ms. Griffin. Hope subsequently filed a motion for immediate possession, and the court entered a writ of possession in August 2019. In February 2020, the court entered an order granting a motion for summary judgment in favor of Hope. In that order, the court found that Hope was entitled to possession of the property.

[5] The record does not contain Ms. Griffin's original answer.

[6] Ms. Griffin's complaint does not assert any claims related to insurance coverage for the dwelling under the policy.

along with excerpts from Ms. Griffin's bankruptcy petition, sworn statement of loss, and contents inventory. Additionally, Allstate submitted the insurance policy. In the memorandum of law supporting the motion, Allstate argued that coverage for additional living expenses was unavailable to Ms. Griffin because the policy required that the home be "your residence premises" in order for her to qualify for additional living expenses, and Allstate argued that she did not have an insurable interest in the property at the time of the fire. Regarding Ms. Griffin's contents claims, Allstate argued that, due to inconsistencies in the description of her personal property in her bankruptcy petition and in the sworn statement of loss and contents inventory sheets, judicial estoppel should apply, and Ms. Griffin's claim for contents coverage under the policy should be dismissed in its entirety. Allstate further argued that her claim for contents coverage should be dismissed because material misrepresentations as to the value and existence of her personal property should result in the policy being void.

In February 2023, after a hearing, the trial court issued an order granting Allstate's motion for summary judgment and dismissing Ms. Griffin's breach of contract claim against Allstate with prejudice. The trial court found that Ms. Griffin was not entitled to coverage for additional living expenses because she lacked an insurable interest in the property. The court further found that judicial estoppel applied to Ms. Griffin's valuation of her personal property, and thus, she was not entitled to any contents coverage under the policy. Ms. Griffin filed a timely notice of appeal.

## II. ISSUES PRESENTED

Ms. Griffin presents the following issues for review on appeal, which we have slightly restated:

1. Whether the trial court impermissibly weighed the evidence at the summary judgment stage;
2. Whether Ms. Griffin had an insurable interest in her contents and additional living expenses on the date of the fire loss;
3. Whether judicial estoppel precludes Ms. Griffin's contents claim;
4. Whether Ms. Griffin materially misrepresented her proof of loss with an intent to deceive.

In its posture as appellee, Allstate raises one issue for review on appeal, which we have slightly restated:

1. Whether the trial court erred in granting Allstate's motion for summary judgment.

For the following reasons, we reverse the decision of the circuit court and remand for further proceedings consistent with this opinion.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. A trial court's decision to grant summary judgment is reviewed de novo with no presumption of correctness. *Falls v. Goins*, 673 S.W.3d 173, 178 (Tenn. 2023). On appeal, we must "make a fresh determination about whether the requirements of Rule 56 have been met." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015)).

A moving party who does not bear the burden of proof at trial can satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Id.* (quoting *Rye*, 477 S.W.3d at 264). Then, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* at 889 (quoting *Rye*, 477 S.W.3d at 265). We accept the evidence presented by the nonmoving party as true, allow all reasonable inferences in its favor, and resolve any doubts about the existence of a genuine issue of material fact in its favor. *Id.* at 887.

## IV. DISCUSSION

### A. Additional Living Expenses

The policy at issue contained the following provision as to additional living expenses:

> We will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection – Coverage A**, **Other Structures Protection – Coverage B** or **Personal Property Protection – Coverage C** makes **your residence premises** uninhabitable. . . .

The policy provided the following relevant definitions:

> Throughout this policy, when the following words appear in bold type, they are defined as follows:
> . . .
> 2. **Building Structure** – means a structure with walls and a roof.
> . . .

- 4 -

4. **Dwelling** – means the single-family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

5. **Insured person(s)** – means you, and if a resident of your household:
     a) any relative; and
     b) any person under the age of 21 in **your** care.
. . .
6. **Insured premises** – means:
     a) the **residence premises**; and
. . .
10. **Residence premises** – means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.
. . .
12. **We**, **us**, or **our** – means the company named on the Policy Declarations.
. . .
14. **You** or **your** – means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

Allstate argues that Ms. Griffin was not entitled to additional living expenses under the policy because she did not have an insurable interest in the property, and therefore, the property was no longer *her* "residence premises."

Our supreme court has described an insurable interest as follows:

It is, of course, essential to the validity of a contract of insurance that the insured have an "insurable interest" in the property insured; otherwise, the contract amounts to no more than a wager and is void because of violation of [public] policy. *Vinson v. Mills,* Tenn., 530 S.W.2d 761 (1975); *Cherokee Foundries v. Imperial Assur. Co.*, 188 Tenn. 349, 219 S.W.2d 203, 9 A.L.R.2d 177 (1949); *Aetna Insurance Co. v. Miers*, 37 Tenn. 139 (1857).

We have for many years in this State followed the principle that one has an insurable interest in property if by its continued existence he will gain an advantage, or if by its damage or destruction he will suffer a loss, whether or not he has any title in, lien upon or possession of the property. *Cherokee Foundries v. Imperial Assur. Co.*, *supra*; *Pappas v. Insurance Co. of State of Pa.*, 54 Tenn. App. 633, 393 S.W.2d 298 (1965); *Isabell v. Aetna Insurance Company, Inc.*, Tenn. App., 495 S.W.2d 821 (1971). This principle was further liberalized by our decision in *American Indemnity Co. v. Southern Missionary Col.*, 195 Tenn. 513, 260 S.W.2d 269, 39 A.L.R.2d 714 (1953) in which it was held that it was not necessary to show for a certainty that the insured would sustain economic injury from loss of the insured property but

that it was sufficient that loss of the property might subject the insured to such injury.

*Duncan v. State Farm Fire & Cas. Co.*, 587 S.W.2d 375, 376 (Tenn. 1979). Furthermore, "[i]t is not necessary . . . in order to constitute an insurable interest, that the assured shall in every instance, have the absolute and unqualified property of the effects insured." *Baird v. Fidelity-Phenix Fire Ins. Co.*, 162 S.W.2d 384, 390 (Tenn. 1942) (quoting *Catron v. Tennessee Ins. Co.*, 25 Tenn. 176 (1845)).

In Tennessee, "[p]ersons or entities who have been held to have an insurable interest even without clear ownership or title include persons in possession of property[.]" *Est. of Cartwright v. Standard Fire Ins. Co.*, No. M2007-02691-COA-R3-CV, 2008 WL 4367573, at *5 (Tenn. Ct. App. Sept. 23, 2008) (citing *Baird*, 162 S.W.2d at 390). For instance, in *Brewer v. Vanguard Ins. Co.*, 614 S.W.2d 360 (Tenn. Ct. App. 1980), a husband and wife purchased a house and resided there with the wife's mother for approximately one year. Thereafter, the wife's mother resided in the house alone while the husband and wife moved away. *Id.* at 361-62. Following a fire that destroyed the house, the insurer denied a claim on the basis that the husband and wife did not occupy the house at any time during the policy period, which constituted a material misrepresentation as to the occupancy of the dwelling, and that the wife's mother had no insurable interest in the dwelling. *Id.* The husband, the wife, and the wife's mother filed suit against the insurer, and the trial court found in the plaintiffs' favor. *Id.* This Court affirmed the decision of the trial court, finding that although the wife's mother did not own the home, she had an insurable interest in the home, stating that "[a]ny interest in property, legal or equitable, qualified, conditional, contingent, or absolute, or merely the right to use the property, with or without the payment of rent, is sufficient . . . ." *Id.* at 364 (quoting 3 *Couch on Insurance 2d*, § 24.13).

We considered a similar issue in *Smith v. Amerisure Ins. Co.*, No. 03A01-9510-CV-00370, 1996 WL 269461 (Tenn. Ct. App. May 22, 1996). In that case, the plaintiffs, a husband and a wife, owned a home and insured it through the defendant. *Id.* at *1. After a creditor threatened to take their home if their debts were not paid, the plaintiffs deeded their house to their son for no consideration. *Id.* The son resided in another home while the husband and wife continued to live in the insured house. *Id.* A year after the transfer, the husband and wife renewed their insurance policy with the defendant. *Id.* Thereafter, a fire destroyed the residence, but when the defendant discovered the plaintiffs did not own the home, it refused to pay any claim. *Id.* The plaintiffs brought suit against the defendant, alleging, among other things, that the defendant wrongfully failed to pay their claim. *Id.* Both parties moved for summary judgment. *Id.* at *2. The trial court granted summary judgment to the defendant, finding that the plaintiffs did not have any insurable interest in the property at the time of the fire. *Id.* This Court vacated the trial court's grant of summary judgment, reasoning:

By the home's destruction, they certainly suffered an economic loss. They

no longer have a home in which to live. Additionally, by simply living in the home, the Plaintiffs have a sufficient interest as described above in *Brewer*. Thus, the Plaintiffs' claim cannot be denied on the lack of an insurable interest.[7]

*Id.* at *3. In reaching this conclusion, we distinguished the case from *Pappas*, 393 S.W.2d 298, stating:

> In that case, the Court held that a father who deeded property to his son did not have an insurable interest in the property. The Court determined that the father would not be advantaged by the continued existence of the property nor would he be disadvantaged by the loss of the property. That is simply not the case here. The Plaintiffs lived in the home and cared for the home. It appears that in *Pappas*, the plaintiff did not live on the property, which, as noted in *Brewer*, can be a sufficient interest.

*Id.* at *4. *See also Adams v. Tenn. Farmers Mut. Ins. Co.*, No. W2009-00931-COA-R3-CV, 2010 WL 1444477, at *5 (Tenn. Ct. App. Apr. 13, 2010) (acknowledging that the insured had conveyed the property to his sons but holding that he nevertheless "had an insurable interest in the residence where he lived, as he certainly benefitted from its continued existence and suffered a loss by its destruction.").

Thus, "Tennessee law broadly construes the term insurable interest." *Consumers Ins. USA v. Smith*, No. E2002-00724-COA-R3-CV, 2002 WL 31863300, at *8 (Tenn. Ct. App. Dec. 23, 2002). This is further illustrated by cases addressing whether an innocent purchaser of a stolen vehicle has an insurable interest in the vehicle. Initially, in *Ins. Co. of N. Am. v. Cliff Pettit Motors, Inc.*, 513 S.W.2d 785 (Tenn. 1974), *overruled by Duncan*, 587 S.W.2d 375, the Supreme Court held that a good faith purchaser for value of a stolen automobile had no insurable interest in the vehicle. The Court reasoned, in part, that the purchaser did not have a legal or equitable interest in the stolen vehicle but instead had a "only a bare possessory interest[.]" *Id.* at 787. The Court further noted that the purchaser's sole interest in the vehicle was that of possession, but her right of possession arose out of an unenforceable contract because the purchaser could rescind the contract due to a breach of the warranty of title. *Id.* (citing Tenn. Code Ann. § 47-2-312). However, the holding in *Cliff Pettit Motors* was later overruled in *Duncan*, where the Supreme Court stated:

> Upon thorough reconsideration of the issue, we have concluded that the Court erred in *Insurance Co. of No. Am. v. Cliff Pettit Motors, Inc.*, *supra*, in holding that "a good faith purchaser for value of a stolen automobile has no

---

[7] Although the court in *Amerisure* used language suggesting that the plaintiffs had an insurable interest, the court ultimately held that there was "a genuine issue for trial, i.e., whether the Plaintiffs had an insurable interest in the home." *Smith*, 1996 WL 269461, at *3.

insurable interest in the stolen vehicle, and therefore cannot recover under his insurance policy for its loss or destruction[.]" Clearly, such a purchaser stands to benefit from the continued existence of such a vehicle because of the continued availability of its use to him unless and until the true owner reclaims it; and, he runs the risk of pecuniary loss by its destruction not only because of the loss of its use, but also because, as a constructive bailee of the property, he may incur liability to the true owner for the value of the vehicle, in the event the true owner makes a claim for its return and he is unable to make delivery because it is destroyed.

*Duncan*, 587 S.W.2d at 376. The Court further stated that "[i]t is the rule, generally, that anyone who has made himself responsible for the safety of personal property has a sufficient interest in it to enable him to obtain insurance on it." *Id.* at 376 n.1.

In the present case, Allstate maintains that Ms. Griffin did not have an insurable interest because she was not in *legal* possession or control of the property and was "at most" a trespasser or squatter. Allstate cites no Tennessee case law in support of this proposition, and our research reveals none. Instead, Allstate relies solely on two cases from other jurisdictions, *Fidelity Phenix Fire Ins. Co. of N.Y. v. Raper*, 6 So.2d 513 (Ala. 1941), and *Splish Splash Waterslides, Inc. v. Cherokee Ins. Co.*, 307 S.E.2d 107 (Ga. Ct. App. 1983). Both of those cases involve losses incurred by sublessees after the property was sublet contrary to the provisions of the original lease.

In *Raper*, a lessee, in violation of the provisions of the lease, subleased the property, and the sublessee erected a building on the land. *Raper*, 6 So.2d at 514. Thereafter, the sublessee sold the building to another individual. *Id.* The plaintiff purchased the interest in the building. *Id.* The Supreme Court of Alabama held that the plaintiff did not have an insurable interest in the property because he was "merely a trespasser or tenant by sufferance," and thus "had no right which he could enforce so far as the building was concerned and could have been ousted at any time." *Id.* The Court further stated that, according to Alabama case law, "a person with no interest in the land other than that of a tenant by sufferance, or a squatter, or a trespasser, has no insurable interest in the property." *Id.* Similarly, in *Splish Splash Waterslides*, the Court of Appeals of Georgia also held that an assignee of a lease did not have an insurable interest in the leased premises where the lessor did not consent to the assignment. *Splish Splash Waterslides*, 307 S.E.2d at 108-10. The court stated that "[w]ithout a valid assignment, appellant 'would be a mere intruder subject to be summarily ousted by the landlord.'" *Id.* at 110 (quoting *Bass v. West*, 36 S.E. 244, 247 (Ga. 1900)). The court further stated that the insured must have "some *lawful* interest in property before he can have an insurable interest in the property." *Id.* Thus, the court held that "a mere intruder or trespasser on the land of another has no insurable interest in that real estate or the buildings thereon." *Id.*

In both cases, the courts stated that mere possession of property, apart from a right

of possession, is insufficient to constitute an insurable interest. *See Raper*, 6 So.2d at 515 (quoting *Royal Exch. Assur. of London, Eng., v. Almon*, 89 So. 76, 78 (Ala. 1921)) ("Just bare possession of the barn with no facts averred except being the husband, to show right of possession and use of the barn, is not sufficient interest in the barn by plaintiff to be insured."); *Splish Splash Waterslides*, 307 S.E.2d at 109 ("[I]t is clear that mere possession of property, although giving the possessor certain rights against a trespasser . . . is in and of itself not sufficient to constitute an insurable interest."). However, the aforementioned Tennessee cases of *Smith* and *Duncan* focused their discussion not on whether the insured had a *right of possession* but on the *benefit the insured received* from the property and the *loss* the insured incurred from the property's destruction. Although the plaintiffs in *Smith* were only occupying the property and did not have legal title to the property, this Court found that the plaintiffs could have an insurable interest because they resided on the property and because of the economic loss they incurred from the destruction of the property. *Smith*, 1996 WL 269461, at *3. Likewise, in *Duncan*, the Court (in overruling *Cliff Pettit Motors*) reasoned that an innocent purchaser of a stolen car had an insurable interest in the vehicle because he had possession of the vehicle and stood to benefit from the continued existence of the vehicle. *Duncan*, 587 S.W.2d at 376.

Here, we take the same approach found in *Smith* and *Duncan*. Ms. Griffin continued to reside at the home at the time of the fire, although her continued possession of the property was being challenged in the wrongful detainer action.[8] Thus, by the home's continued existence, she would "gain an advantage," in continuing to have a place to reside (at least until potentially being removed by pending legal action). Consequently, by the home's destruction, she would "suffer a loss" by immediately having to find another place to live. *Id.* In accordance with precedent, we find this fact a sufficient reason to conclude that Ms. Griffin had an insurable interest in the property. Therefore, we conclude that the trial court erred in granting summary judgment to Allstate on the additional living expenses claim on the basis that Ms. Griffin did not have an insurable interest in the property.

### B. Contents Coverage

The insurance policy additionally provided for contents coverage for personal property "owned or used by an **insured person** anywhere in the world." Allstate argues that judicial estoppel precludes Ms. Griffin's contents coverage under the policy. Under judicial estoppel, "a party will not be permitted to occupy inconsistent positions or to take

---

[8] Under Section 22 of the Deed of Trust, a borrower who refuses to surrender possession following a default and related sale of the property becomes a "tenant at will of the purchaser[.]" The status of Ms. Griffin's possession of the property is not before this Court, and there is no evidence in the record of any agreements or transactions between Ms. Griffin and Hope after the foreclosure sale other than the wrongful detainer action to remove her from the property. Therefore, we make no finding as to Ms. Griffin's legal status as an occupant of the property at the time of the fire because it has no bearing on our ultimate conclusion.

a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts . . . ." *Kershaw v. Levy*, 583 S.W.3d 544, 548 (Tenn. 2019). Judicial estoppel only applies when "a party has attempted to contradict by oath a sworn statement previously made." *Id.* (quoting *Cracker Barrel Old Country Store v. Epperson*, 284 S.W.3d 303, 315 (Tenn. 2009)). Our supreme court has further described when the doctrine of judicial estoppel is applicable:

> Judicial estoppel is an equitable doctrine, so the circumstances under which it applies "are probably not reducible to any general formulation of principle." [*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)]. At the very least, however, the statements being compared must be "clearly inconsistent." *Id.* The doctrine of judicial estoppel does not apply when there is "an innocent inconsistency or apparent inconsistency that is actually reconcilable." 28 Am. Jur. 2d *Estoppel and Waiver* § 68 (footnote omitted). The two sworn statements "must be totally inconsistent—that is, the truth of one . . . must necessarily preclude the truth of the other . . . ." *Id.*; *see, e.g.*, *Brown v. Brown*, 198 Tenn. 600, 281 S.W.2d 492, 502 (1955) (citing [*Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313 (Tenn. 1924)]); [*Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39, 43 (1857)] ("It is … impossible to reconcile the statements of either [litigant], made prior to this suit, with his own allegations in the pleadings."); *Barnes v. Barnes*, No. E2003-00070-COA-R3-CV, 2004 WL 115148, at *1, 6 (Tenn. Ct. App. Jan. 23, 2004) (judicial estoppel not applicable because party had reasonable explanation for asserting that he divorced his first wife in 1950 and also in 1988); *Davis v. Mitchell*, 27 Tenn. App. 182, 178 S.W.2d 889, 897 (Tenn. Ct. App. 1943) ("[Judicial estoppel] can never find application unless there has been what is equivalent to a specific and cat[e]gorical denial of that which has been affirmed, unaccompanied by any reasonable explanation of the discrepancy.").

*Id.* at 549. We review a trial court's application of the doctrine of judicial estoppel de novo. *Id.* at 547 (citing *Frazier v. Pomeroy*, No. M2005-00911-COA-R3-CV, 2006 WL 3542534, at *10 (Tenn. Ct. App. Dec. 7, 2006); *Terrell v. Terrell*, 292 S.W.2d 179, 182 (Tenn. 1956)).

Allstate argues that Ms. Griffin is precluded under the doctrine of judicial estoppel from asserting her claim for contents coverage. In support of this argument, Allstate chiefly relies on an unreported decision of the U.S. Court of Appeals for the Sixth Circuit in *Smith v. Fireman's Fund Ins. Co.*, 16 F.3d 1221 (Table), 1994 WL 6043 (6th Cir. Jan. 7, 1994). In *Smith*, after a fire loss in 1990, the plaintiffs submitted a contents inventory and sworn statement of loss to their insurer. *Id.* at *1. The insurer denied the plaintiffs' claim, alleging that plaintiffs made material misrepresentations in the contents inventory

and proof of loss. *Id.* The district court found that judicial estoppel barred the plaintiffs' subsequently filed lawsuit because the valuation and disclosure of their personal property in their 1984 bankruptcy petition was inconsistent with their contents inventory and proof of loss submitted to their insurer. *Id.* at *2. The Sixth Circuit affirmed, finding that the plaintiffs "have not been consistent regarding the total value of their personal possessions in 1984." *Id.* at *3. The plaintiffs claimed the total value of their personal belongings in their bankruptcy petition was $4,010, but in their contents inventory they listed $21,384.67 worth of personal possessions purchased prior to 1984. *Id.* Thus, the court found that due to the inconsistent positions taken in the bankruptcy petition and in the contents inventory sheets, the plaintiffs were judicially estopped from claiming recovery for anything they owned in 1984 but failed to disclose in the bankruptcy petition. *Id.*

Here, we recognize that Ms. Griffin has not been consistent in identifying some of the property she owned at the time she filed her bankruptcy petition on August 30, 2018. In the bankruptcy petition, Ms. Griffin claimed that she did not own any electronics, collectibles of value, and equipment for sports and hobbies. In the contents inventory sheets completed in May and June 2019, she listed numerous electronics, collectibles, and sports and hobby equipment with ages one year old and older. Likewise, in the bankruptcy petition, for "household goods and furnishings," Ms. Griffin listed a refrigerator, a stove, a kitchen set, four bedroom sets, and four televisions. In the contents inventory sheets, there are multiple other household goods and furnishings with ages one year and older. However, we note that some of the differences in disclosure of property in the bankruptcy petition and the contents inventory are possible to reconcile. Many of the items on the contents inventory were listed as having an age of eight months or younger. Thus, it appears that she could have acquired some of the property listed in the contents inventory after she filed the bankruptcy petition. As such, the personal property Ms. Griffin disclosed in her bankruptcy petition does not "necessarily preclude the truth" of the existence of all of the personal property reported in her sworn statements to Allstate. *Kershaw*, 583 S.W.3d at 549.

Moreover, we note that in the bankruptcy petition, Ms. Griffin was required to provide the "current value" of the personal property. The values on the contents inventory, however, were listed within the column that called for the "original cost" of each item. Thus, the values of the personal property with ages of one year or older in the contents inventory and the values listed on the bankruptcy petition are not necessarily inconsistent. *See Allstate Ins. Co. v. Sinton*, No. 1:09-CV-3530-CAP, 2012 WL 12831939, at *4 (N.D. Ga. July 27, 2012) ("[I]n their bankruptcy proceeding, Ms. Sinton made certain representations about the **market value** of her items of personal property. Prior to and during this proceeding, the Sintons have made certain representations about the **original prices** they paid for items of personal property destroyed by the fire."); *see also State Farm Fire & Cas. Co. v. Billingsley*, No. CIV. A. 09-0267-KD-C, 2010 WL 1511560, at *9 (S.D. Ala. Apr. 14, 2010) ("Because the 'current value' of personal property, versus the 'replacement cost' of personal property, are distinct values, Billingsley's representations—

- 11 -

to the extent they diverge—are not necessarily 'inconsistent positions.'").

A federal district court reached a similar conclusion, when applying federal judicial estoppel, in *Naff v. State Farm Gen. Ins. Co.*, No. 1:15-CV-00515-JLT, 2016 WL 7742802 (E.D. Cal. July 5, 2016). In that case, the court denied the defendant's motion for summary judgment on the ground that judicial estoppel applied to a difference in valuation of personal property in a bankruptcy petition and contents inventory. *Id.* at *8-9. The plaintiffs assigned a lower value to their personal property in a bankruptcy petition than the value of their personal belongings listed in a contents inventory. *Id.* at *2. After their insurer denied their claim for personal property losses following a fire, the plaintiffs filed suit and alleged, among other things, that the insurer was liable for breach of contract. *Id.* at *4. The insurer subsequently moved for summary judgment. *Id.* at *1. The insurer premised its summary judgment motion upon the inconsistency in the representations the plaintiffs made to the bankruptcy court in 2010 and in the plaintiffs' inventory lists provided to the insurer after the 2012 fire. *Id.* at *6. In addressing the motion for summary judgment, the court noted that the plaintiffs attested that some of the items listed on the inventory were purchased after the bankruptcy and that many of the items belonged to the plaintiffs' children. *Id.* at *8. The district court further noted that in the bankruptcy proceedings, the plaintiffs were asked to disclose the "current value" of the personal property, but the insurer's inventory forms asked them for their opinions regarding the "replacement cost" of their personal property. *Id.* at *9. Thus, the court denied the insurer's motion for summary judgment on the basis of judicial estoppel, finding that reported "current value" of the plaintiffs' property in the bankruptcy proceedings was "not necessarily" incompatible with the replacement value reported by plaintiffs for their insurance claim. *Id.*

We note that Allstate argued in its motion for summary judgment that Ms. Griffin's inconsistent statements "warrant[ed] dismissal of her claim for personal property coverage under the policy pursuant to the judicial estoppel doctrine[.]" Allstate did not seek to utilize judicial estoppel in a more limited manner, barring Ms. Griffin from recovery for specific items or categories of property. However, the trial court concluded that Ms. Griffin was judicially estopped from claiming *any* loss of personal property in the fire. Because many of the alleged inconsistencies in the disclosure of the personal property are reconcilable, we cannot agree with the trial court's finding that Ms. Griffin's disclosed personal property in her bankruptcy petition was "completely inconsistent with what was presented to Allstate for contents coverage." As such, we disagree with the trial court's conclusion that Ms. Griffin is judicially estopped from claiming *any* loss of personal property in the fire. *See Smith*, 16 F.3d 1221, 1994 WL 6043, at *3 (explaining that the insured was judicially estopped from "claiming recovery under the insurance policy for any items [she] failed to disclose in the bankruptcy proceeding"). For this reason, we conclude that Allstate is not entitled to judgment as a matter of law dismissing the breach of contract claim in its entirety as it relates to contents coverage, and we reverse the grant of summary judgment to Allstate as to the contents claim on that basis. To be clear, given Allstate's specific argument to the

trial court and the trial court's related ruling, our narrow holding on appeal is that the trial court erred by dismissing the claim for contents coverage *in its entirety* based on judicial estoppel.

## C. Allstate's Remaining Arguments

Allstate argues that summary judgment was proper under an additional ground. Allstate maintains that Ms. Griffin's post-loss misrepresentations preclude contents coverage because both the policy and Tennessee law provide that the policy may be voided for "concealments and misrepresentation[.]" Although Allstate raised this argument in its memorandum of law in support of its motion for summary judgment, the trial court did not address whether the policy was void due to any post-loss misrepresentations.

This Court has stated the following concerning appeals of a grant or denial of summary judgment:

> The Rules of Civil Procedure expressly require that the trial court state the grounds for any grant or denial of summary judgment. Tenn. R. Civ. P. 56.04 ("The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling."). While this Court may sometimes affirm the trial court's grant of summary judgment on different grounds than those stated, *see City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004), we have been directed by our supreme court that an archeological dig of the record to support a trial court's action is not required. *See generally Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014). Rather, the Tennessee Supreme Court has stated that a trial court's order granting or denying summary judgment must be the product of the trial court's independent judgment. *Id.* As such, we have more recently declined to rule on issues that were not expressly addressed by the trial court. *See Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *14 (Tenn. Ct. App. Aug. 14, 2015) ("Generally, when the trial court fails to address an issue in the first instance, this Court will not consider the issue, but will instead remand for the trial court to make a determination in the first instance.").

*Dent Rd. Gen. P'ship v. Synovus Bank*, No. W2017-01550-COA-R3-CV, 2018 WL 6173406, at *15 (Tenn. Ct. App. Nov. 26, 2018). Because the trial court did not make any determination in the first instance as to the merits of Allstate's additional ground, we decline to consider this issue here. Instead, we remand for the trial court to make its determination on this ground.

As a result of our holding, we do not reach Ms. Griffin's remaining issues, and they

are, therefore, pretermitted.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Allstate Corporation, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE